In re Nancy M. FJELDSTED, Debtor.

Nancy M. Fjeldsted; Damon Lamont Hobdy, Appellants,

v.

Peter Lien; Nancy Curry, Chapter 13 Trustee; United States Trustee, Appellees.

BAP No. CC–02–1191–MaPK.

Bankruptcy No. LA 01–44532 ES.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Jan. 23, 2003.

Filed April 30, 2003.

Damon L. Hobdy, Law Offices of Damon Lamont Hobdy, Pasadena, CA, for Nancy M. Fjeldsted.

Before: MARLAR, PERRIS and KLEIN, Bankruptcy Judges.

## OPINION

MARLAR, Bankruptcy Judge.

### INTRODUCTION

The chapter 13[1] debtor has appealed the court's decision to annul the automatic stay retroactively for "cause" under

---

**1.** Unless otherwise indicated, section and chapter references are to the Bankruptcy Code, 11 U.S.C. § 101–1330, and rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036, which make applicable certain Federal Rules of Civil Procedure.

§ 362(d)(1),[2] in order to validate an otherwise void, postpetition foreclosure sale of the debtor's residence to a good faith purchaser for value and without notice of the bankruptcy ("bona fide purchaser"). The debtor's attorney, Damon Lamont Hobdy ("Hobdy"), has also appealed a $600 sanction.

We conclude that a determination of whether or not to annul the automatic stay and thereby grant retroactive relief requires the court to balance the equities, and that bona fide purchaser status alone is not cause to validate a sale. We are also bound by *Value T Sales, Inc. v. Mitchell (In re Mitchell)*, 279 B.R. 839 (9th Cir. BAP 2002), an opinion decided after entry of the bankruptcy court's judgment, which held that bona fide purchaser status under § 549(c) is not an exception to the automatic stay.

We also clarify that a Ninth Circuit court "balances the equities in order to determine whether retroactive annulment is justified"—the test set forth in *Nat'l Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp.)*, 129 F.3d 1052, 1055 (9th Cir.1997), *cert. denied*, 524 U.S. 952, 118 S.Ct. 2368, 141 L.Ed.2d 736 (1998), and that the standard is not "extreme circumstances," which is at odds with the court's broad exercise of its discretion.

Therefore, we REVERSE and REMAND the stay relief order. We also REVERSE and REMAND the sanction order, as the sanction was imposed without adequate due process.

### FACTS

Before she filed her instant chapter 13 case, Nancy M. Fjeldsted's ("Debtor") pri-

or chapter 13 case was dismissed, without a bar to refiling, on November 7, 2001. A foreclosure sale of Debtor's home was then noticed by Bank of America ("Bank") for November 19, 2001, at 11:00 a.m. At 10:11 a.m. that morning, Debtor filed a new chapter 13 petition. It was undisputed that Hobdy informed the Bank's foreclosure trustee of Debtor's bankruptcy filing prior to the scheduled sale.

The foreclosure trustee then gave notice to Trustee Assistance Corporation ("TAC"), which was conducting the sale, advising it to postpone the sale due to a new bankruptcy filing. Consistent with protocol, the auctioneer then announced to all persons present, sometime between 11:05 a.m. and 11:30 a.m., that the sale was being postponed until 1:00 p.m. that afternoon due to a bankruptcy filing.

Peter Lien ("Lien"), who purchases foreclosed properties, and his broker Eric Yu ("Yu") testified that they arrived at the sale about 11:30 a.m. Yu asked the auctioneer about the sale and was told simply that it had been postponed until 1:00 p.m. that day. Lien and Yu then went to lunch and returned at 1:00 p.m. Lien and Yu further testified that they were not present for the announcement and did not know, prior to the sale, about Debtor's bankruptcy.

Notwithstanding the bankruptcy filing, the sale went forward at 1:00 p.m. on November 19, 2001, and Lien was the successful purchaser, paying $307,000 for the property. Lien then recorded the trustee's deed eight days later, on November 27, 2001.

A few weeks later, Debtor filed a complaint against the Bank, TAC, Lien, and

---

**2.** Section 362(d) provides, in pertinent part:
 On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminat-

ing, annulling, modifying, or conditioning such stay—
 (1) for cause . . . .
 11 U.S.C. § 362(d)(1).

others to set aside the trustee's sale, for cancellation of the trustee's deed, and for other relief. Debtor alleged that the sale violated the automatic stay and was void.

Believing himself to be the rightful owner, Lien moved for stay relief. He also alleged bad faith on the part of Debtor in filing the petition.

Debtor opposed the motion. She filed the auctioneer's declaration in which he stated: "I recall a Mr. Peter Lien being present at the time I announced the reasons for the postponement, because in selling the property to Mr. Lien at approximately 1:00 p.m., I recall him also being present at approximately 11:00 a.m." Decl. of Garth Russell (Jan. 17, 2002), ¶ 4, at 1. The question whether Lien was a bona fide purchaser therefore became a disputed issue.

At an initial hearing on the stay relief motion, the court announced its tentative ruling to annul the stay on the grounds that Lien was a bona fide purchaser.[3] The court cited § 549(c), which provides, in pertinent part, that a bankruptcy trustee may not avoid a postpetition transfer of real property "to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value ...." 11 U.S.C. § 549(c).[4] However, the court found there was a factual dispute concerning whether Lien had knowledge of Debtor's bankruptcy filing prior to his purchase of the property. The court then set an evidentiary hearing on the issue of Lien's bona fide purchaser status.

At the same initial hearing, Hobdy and the bankruptcy judge discussed some of Hobdy's allegations. The court warned Hobdy that his opposition papers were "full of wild allegations that don't have any support" and that he was "walking a fine line ... in terms of sanctions." Tr. of Proceedings (Jan. 15, 2002), at 20.

At the later evidentiary hearing, the auctioneer changed his testimony and stated that he was unsure whether Lien was present at the time of the postponement announcement, emphasizing that he only recalled Lien being present at "approximately" 11:00 a.m. Tr. of Proceedings (Feb. 8, 2002), at 81, 87. Therefore, the auctioneer's testimony no longer contradicted Lien's.

Lien then testified that he had attended hundreds of auctions in the past five years, and that it was not unusual for a sale to be

---

**3.** The court also found that Debtor filed the chapter 13 petition in bad faith, but it abandoned that ruling as a ground for stay relief. Debtor's bad faith has not been raised as an issue in this appeal, nor has a cross-appeal been filed. Therefore, the issue of Debtor's bad faith has been waived. *See Brooks v. City of San Mateo*, 229 F.3d 917, 922 n. 1 (9th Cir.2000) ("On appeal, arguments not raised by a party in its opening brief are deemed waived.").

Upon remand, the court may revisit the bad faith issue as part of a balancing-of-the-equities test.

**4.** Section 549(c) provides in full:

The trustee may not avoid under subsection (a) of this section a transfer of real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed, where a transfer of such real property may be recorded to perfect such transfer, before such transfer is so perfected that a bona fide purchaser of such property, against whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to the interest of such good faith purchaser. A good faith purchaser without knowledge of the commencement of the case and for less than present fair equivalent value has a lien on the property transferred to the extent of any present value given, unless a copy or notice of the petition was so filed before such transfer was so perfected.

postponed or cancelled. He further testified that he did not think it was necessary or important to inquire of the auctioneer as to why the sale of Debtor's property had been postponed until 1:00 p.m. Yu, who had also attended about a hundred auctions, corroborated Lien's testimony that postponement was a common occurrence and that it was not important to ascertain the reason for the postponement of this sale.

The court ultimately found that (1) neither Lien nor Yu were present for the postponement announcement, (2) they learned about the two-hour postponement when they arrived but were not told the reason for such postponement, and therefore, (3) they had no actual notice or knowledge of Debtor's bankruptcy filing before Lien's purchase. Nevertheless, the court asked the parties to brief whether the postponement of the foreclosure sale had put Lien on inquiry notice.

At the continued evidentiary hearing, Debtor argued that Lien was not a bona fide purchaser because he learned about the bankruptcy before he recorded the trustee's deed. However, the court ruled that only Lien's knowledge at the time of the foreclosure sale was relevant. The court also ruled that Lien perfected his title because, under California law, the deed was deemed recorded on the day of the foreclosure sale because it had been recorded within 15 days thereafter. *See* Cal. Civ.Code § 2924h(c).[5]

Concerning the issue of Lien's inquiry notice, the court found that a two-hour delay of a trustee's sale would not reasonably be considered to be caused by a bankruptcy filing. The court concluded that Lien's bona fide purchaser status justified annulment of the stay and validation of the sale as to Lien.[6] Before entering judgment, however, the court asked for briefing on the issue of compensation to Lien for his loss of use of the property.

Also prior to the entry of judgment, Debtor moved for reconsideration of the court's ruling. At the hearing thereon, on March 25, 2002, the court denied the motion as frivolous and stated that she believed it misstated the court's ruling. The hearing then took an unfortunate turn for Hobdy: when he attempted to explain his pleading to the court, the court lost patience with him, and sanctioned him $500. When he attempted once more to speak, the court imposed another $100, for a total sanction of $600.

The orders annulling the stay and imposing sanctions were entered on March 25 and 26, 2002, respectively, and were timely appealed.

### ISSUES

1. Whether we have jurisdiction over the order annulling the stay, when a separate order denying the premature motion for reconsideration was not entered.

11 U.S.C. § 549(c).

**5.** California Civil Code § 2924h(c) provides, in pertinent part:

[T]he trustee's sale shall be deemed final upon the acceptance of the last and highest bid, and shall be deemed perfected as of 8 a.m. on the actual date of sale if the trustee's deed is recorded within 15 calendar days after the sale, or the next business day following the 15th day if the county record-

er in which the property is located is closed on the 15th day. . . .
Cal. Civ.Code § 2924h(c)(West 1993 & Supp. 2003).

**6.** Although the court noted that annulment was necessary to validate a void sale, it expressly declined to rule as to any liability of the Bank and others for violating the automatic stay. Those issues were pending in an adversary proceeding before another bankruptcy judge.

2. Whether the finding that Lien was a bona fide purchaser was clearly erroneous.

3. Whether bona fide purchaser status, standing alone, constitutes either an exception to the stay, under § 549(c), or "cause" to annul the automatic stay pursuant to § 362(d)(1).

4. Whether the court abused its discretion in imposing sanctions against Hobdy.

### STANDARDS OF REVIEW

■ The court's decision to grant retroactive relief from the automatic stay is reviewed for an abuse of discretion. *Nat'l Envtl. Waste Corp.*, 129 F.3d at 1054. The reviewing court must give due regard to the opportunity of the bankruptcy court to judge the credibility of the witnesses. Fed. R. Bankr.P. 8013. Under this standard, the bankruptcy court will be reversed only if it based its ruling upon an erroneous view of the law or a clearly erroneous assessment of the evidence. *See Jewett v. Shabahangi (In re Jewett)*, 146 B.R. 250, 251 (9th Cir. BAP 1992).

■ To the extent the court interpreted the Bankruptcy Code, its legal conclusions are subject to the *de novo* standard of review. *See Taylor v. Tsafaroff (In re Taylor)*, 884 F.2d 478, 480 (9th Cir.1989).

■ The bankruptcy court's imposition of sanctions pursuant to Fed. R. Bankr.P. 9011 or under its inherent authority is also reviewed for an abuse of discretion. *Miller v. Cardinale (In re Deville)*,. 280 B.R. 483, 492 (9th Cir. BAP 2002). Whether the sanction comported with due process is a question of law, which we review *de novo*. *Id.*

### DISCUSSION

#### A. Jurisdiction

■ As a threshold issue, we must determine our jurisdiction to hear this appeal. *Travers v. Dragul (In re Travers)*, 202 B.R. 624, 625 (9th Cir. BAP 1996).

■ Debtor filed her motion for reconsideration following the court's oral announcement of its ruling; therefore the motion was premature. Rule 9023, incorporating Fed.R.Civ.P. 59, provides that a motion for new trial/reconsideration must be filed no later than 10 days *after* entry of the judgment. A timely motion thus tolls the start of the appeal period until entry of the order denying such motion. *See* Fed. R. Bankr.P. 8002(b). Here, only one judgment was entered, on March 25, 2002, which granted stay relief but did not expressly deny the motion for reconsideration.

Thus, our jurisdiction is at issue in this way: if the premature motion for reconsideration was actionable, did it toll the appeal period indefinitely, after entry of the March 25, 2002 order, absent entry of a separate order denying such motion?

Typically, as was done in this case, a court will consider a premature motion for reconsideration. *See Constellation Dev. Corp. v. Dowden (In re B.J. McAdams, Inc.)*, 999 F.2d 1221, 1223–24 (8th Cir. 1993) (court had jurisdiction to consider premature motion for rehearing, which tolled appeal time); *Contempo Metal Furniture Co. of Cal. v. E. Tex. Motor Freight Lines, Inc.*, 661 F.2d 761, 764 n. 1 (9th Cir.1981) (allowing motion for new trial after court orally entered its opinion, but before entry of judgment); *McCulloch Motors Corp. v. Or. Saw Chain Corp.*, 245 F.Supp. 851, 853 (S.D.Cal.1963) (finding premature motion timely but precluding another motion for new trial following judgment). *See also* Fed. R. Bankr.P. 8002(a) (notice of appeal filed after the announcement of a decision or order but

before entry of judgment, order, or decree is treated as filed after such entry).

Here, the parties were cognizant of the court's ruling on the stay relief motion following the evidentiary hearing and oral findings. However, the court asked for further briefing on the amount of compensation due Lien for his loss of use of the property. The court also gave the opposing party an opportunity to respond to the motion for reconsideration. A further hearing was then held on all of these matters on March 25, 2002, where the court orally denied the reconsideration motion. On the same day, the court entered its formal judgment for stay relief. Such order implicitly denied the motion for reconsideration, which was subsumed within the order annulling the stay. Since that judgment was timely appealed, we therefore have jurisdiction to hear this appeal.

### B. Lien Was a Bona Fide Purchaser

California law determines whether Lien was a bona fide purchaser. *See Siegel v. Boston (In re Sale Guar. Corp.)*, 220 B.R. 660, 665 (9th Cir. BAP 1998), *aff'd*, 199 F.3d 1375 (9th Cir.2000). A bona fide purchaser purchases (1) for value, (2) in good faith, and (3) without actual or constructive notice of another's rights. *See Oakdale Village Group v. Fong*, 43 Cal.App.4th 539, 547, 50 Cal. Rptr.2d 810, 815 (Ct.App.1996). The bankruptcy court found that Lien was a bona fide purchaser because he purchased Debtor's property for value and without either actual or constructive notice of Debtor's bankruptcy. In addition, the court found that Lien had perfected his

interest and thus met the requirements of a "good faith purchaser" under § 549(c).[7]

Debtor maintains that the bankruptcy court erred in finding that Lien did not have actual or constructive notice of her bankruptcy. First, Debtor contends that the evidence proved that Lien was present for the postponement announcement. Debtor's evidence on that point, however, was disputed.

Lien and Yu testified that they arrived after the announcement and did not hear it; that they were not told, nor did they ask, the reason for the postponement; and they did not discover the fact of Debtor's bankruptcy filing until sometime after the sale. Even the auctioneer changed his testimony to say that he was unsure whether Lien was present for the announcement. On this evidence, the bankruptcy court's finding that neither Lien nor Yu had actual knowledge of the bankruptcy filing at the time of the sale was not clearly erroneous.

Debtor also contends that Lien had constructive, or inquiry, notice because the fact of postponement should have alerted him to the bankruptcy filing. We disagree.

Resolution of this issue turns on California Civil Code § 19. *See Robertson v. Peters (In re Weisman)*, 5 F.3d 417, 420 (9th Cir.1993) (legal fiction of bankruptcy trustee as a perfect bona fide purchaser can be defeated by Cal. Civ.Code § 19). This section provides:

> Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting

---

**7.** Section 549(c) creates a three-part test: (1) was Lien a "good faith purchaser without knowledge of the commencement of the case"; (2) did he pay "present equivalent value"; and (3) was his interest "so perfect-

ed," before a copy or notice of the petition was filed, that a bona fide purchaser could not have acquired a superior interest. *See* 11 U.S.C. § 549(c).

such inquiry, he might have learned such fact.

Cal. Civ.Code § 19 (West 1982). "Whether the circumstances are sufficient to require inquiry as to another's interest in property for the purposes of section 19 is a question of fact . . . ." *Weisman,* 5 F.3d at 421.

A private nonjudicial foreclosure sale under a trust deed's power of sale clause is governed by Cal. Civ.Code §§ 2924g and 2924h. Under § 2924g, the creditor is required to give notice and announce postponement and the reason therefor; that notice may be by public declaration at the time and place set for the sale, and it shall also set forth the new sale date and time. Cal. Civ.Code § 2924g(a) and (d). Thus, the sale may be postponed orally. *See Nghiem v. Ghazvini (In re Nghiem),* 264 B.R. 557, 561 (9th Cir. BAP 2001), *aff'd,* 53 Fed.Appx. 489 (9th Cir.2002) (stating that no further notice of postponement is necessary other than the § 2924g oral declaration). Indisputably, such notice was given at the sale of Debtor's property.

Although the reason for postponement was Debtor's bankruptcy, a sale may be postponed for reasons other than a bankruptcy, such as at the trustee's discretion. Section 2924g(c) provides, in pertinent part:

> (c)(1) There may be a postponement of the sale proceedings at any time prior to the completion of the sale at the discretion of the trustee, or upon instruction by the beneficiary to the trustee that the sale proceedings be postponed. There may be a maximum of three postponements of the sale proceedings pursuant to this subdivision . . . . .
>
> (2) The trustee shall postpone the sale upon the order of any court of competent jurisdiction, or where stayed by operation of law, or by the mutual

agreement, whether oral or in writing, of any trustor and any beneficiary or any mortgagor and any mortgagee . . . .

Cal. Civ.Code § 2924g(c) (West 1993 & Supp.2003).

Lien and Yu had attended hundreds of sales, and postponement was commonplace, they testified. On our facts, Lien was not present for the public declaration. A postponement of only two hours would not put Lien on inquiry notice that a bankruptcy filing had occurred, as the court properly found. Therefore, the bankruptcy court's finding that Lien was a bona fide purchaser was not clearly erroneous.

### C. Bona Fide Purchaser Status as "Cause" to Annul the Stay

#### 1. The Foreclosure Sale was Void

The automatic stay of § 362(a) prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Therefore, the foreclosure sale, which was held after Debtor filed her chapter 13 petition, was void. *See Schwartz v. United States (In re Schwartz),* 954 F.2d 569, 572 (9th Cir.1992).

Although the bankruptcy court granted retroactive annulment of the stay as to Lien, it hesitated to determine any such issues as to the Bank, since there was an adversary proceeding to set aside the sale pending before a different judge. The court stated:

> I'm terminating the stay retroactive to the petition date, only as to Mr. Lien. And [sic] have granted no relief as to Bank of America or the entity that conducted the foreclosure sale. I mean, I guess I've granted relief to them to the extent that . . . . let me just modify this last statement I just made. *To the extent of [sic] my ruling means that this*

*foreclosure sale stands, I guess, to that extend [sic] I've entered some relief as to Bank of America and the, [sic] but I'm making absolutely no statement with regard to any liability either one of those entities has to the debtor here by reason of the fact that, [sic] that foreclosure sale went forward.*

Tr. of Proceedings (March 6, 2002), at 21 (emphasis added).

Thus, the court's ruling determined that the foreclosure sale violated the automatic stay and was void. By granting retroactive stay relief as to Lien only, the court nonetheless validated Lien's right to the property through the sale.

### 2. *"Cause" to Annul the Stay*

Section 362(d) sets forth the grounds for relief from the stay. It provides that the court shall grant relief—for example, by terminating, annulling, modifying or conditioning the stay—"for cause, including the lack of adequate protection of an interest in property." 11 U.S.C. § 362(d)(1). In addition, § 362 provides that the court shall grant relief from the stay of an act against the property if the debtor has no equity in the property and the property is not necessary for an effective reorganization. 11 U.S.C. § 362(d)(2).

█ A bankruptcy court has authority to make exceptions to, and to annul, the automatic stay under § 362(d). *See Schwartz*, 954 F.2d at 572–73 ("Section 362(d) outlines the bankruptcy court's authority to make exceptions to the general operation of the stay.") This authority includes annulment providing retroactive relief, which, if granted, moots any issue as to whether the violating sale was void because, then, there would have been no actionable stay violation. *See Schwartz*, 954 F.2d at 573.

The Ninth Circuit has held that the bankruptcy court has "wide latitude in crafting relief from the automatic stay, including the power to grant retroactive relief from the stay." *Id.* at 572; *Nat'l Envtl. Waste Corp.*, 129 F.3d at 1054–55; *Mataya v. Kissinger (In re Kissinger)*, 72 F.3d 107, 109 (9th Cir.1995). There is less appellate clarity, however, in enunciating a test for retroactive stay relief. Inconsistent standards have thus developed, which run the gamut from such relief being justified only in "extreme circumstances" to giving the court "wide latitude" to "balance[ ] the equities" on a case-by-case basis. *Compare Phoenix Bond & Indem. Co. v. Shamblin (In re Shamblin)*, 890 F.2d 123, 126 (9th Cir.1989) ("extreme circumstances") with *Nat'l Envtl. Waste Corp.*, 129 F.3d at 1054–55 (court "balances the equities").

Some courts, in an effort not to upset the goals of the automatic stay in the protection of the debtor, the estate, and the nonmoving creditors who depend on it, have explained that annulment giving retroactive stay relief is a remedy that must be used "sparingly," is a "radical form of relief" or an "extraordinary action," or is to be "applied only in extreme circumstances." *See generally* 1 David G. Epstein, Steve H. Nickles & James J. White, *Bankruptcy* § 3–32b ("Judicial Annulment"), at 356 (West Practitioner Treatise Series 1992). *See also Shamblin*, 890 F.2d at 126; *Scrima v. John Devries Agency, Inc.*, 103 B.R. 128, 135 (W.D.Mich.1989) (retroactive annulment is an "extraordinary action" and a "radical form of relief," and was not justified in the absence of bad faith on the part of the debtor). Nonetheless, in the end, those courts simply apply a balancing test to determine whether such relief is equitable.

In *Shamblin*, the debtors' commercial real property was sold at a postpetition tax

sale to a bona fide purchaser. *Shamblin,* 890 F.2d at 124–25. The purchaser paid the back taxes and received a Certificate of Purchase, which it then assigned to another party. After the purchaser learned about the bankruptcy filing, he applied for and obtained the issuance of a tax deed to the assignee.

On appeal, the purchaser and other appellants argued that retroactive stay relief was justified under the circumstances. At that time, the court's authority to annul the automatic stay was still an open question. *See id.* at 126 n. 3. In declining to decide the broader question of "whether equitable principles may, in a proper case, justify retroactive annulment of the stay," the Ninth Circuit nonetheless balanced the equities in determining that "equity favor[ed] enforcement rather than annulment of the stay." *Id.* at 126.

Thus, the Ninth Circuit applied a balancing-of-the-equities standard, even though it articulated a narrow and cautious approach. Among the equitable reasons for denying annulment, the Ninth Circuit found that the appellants could have sought relief from the stay before committing the acts that violated it. Instead, they continued with the tax deed proceeding, and in doing so, misled the court regarding the bankruptcy. *Id.*

No Ninth Circuit case since *Shamblin* has actually imposed an "extreme" or "extraordinary circumstances" test. The first serious consideration by the Ninth Circuit of the court's power to annul the stay appears in *Schwartz,* in 1992. In *Schwartz,* the Ninth Circuit held that a tax assessment, which violated the automatic stay, was void rather than merely voidable. *Schwartz,* 954 F.2d at 571. In resolving

the "void" versus "voidable" issue, the Ninth Circuit addressed the argument that § 362(d)—the provision for annulling the automatic stay—would be rendered meaningless if stay violations were void *ab initio,* and stated:

> [S]ection 362(d) is not inconsistent with the conclusion that any action in violation of the automatic stay is void and of no effect. Section 362(d) outlines the bankruptcy court's authority to make exceptions to the general operation of the stay. If a creditor obtains retroactive relief under section 362(d), there is no violation of the automatic stay, and whether violations of the stay are void or voidable is not at issue.
>
> . . . .
>
> [S]ection 362(d) gives the court the power to ratify retroactively any violation of the automatic stay which would otherwise be void. Simply put, there is nothing remarkable or inconsistent about the normal operation of the automatic stay being subject to a specific statutory exception such as that found in section 362(d).

*Id.* at 572–73.

Thus, the *Schwartz* court opined that retroactive stay relief was within the "normal operation" of § 362(d), although the issues before the Ninth Circuit did not include whether retroactive stay relief was justified.[8]

The importance of judicial discretion was then illustrated in *Kissinger,* 72 F.3d at 109. During a recess in a state court legal malpractice action brought by creditors against their attorney ("Kissinger"), Kissinger filed a chapter 11 bankruptcy petition. Despite knowing about the bank-

---

**8.** The government argued that the tax assessment fell within a narrow exception for mere technical violations. While declining to address the issue of whether such an exception

existed, the Ninth Circuit found that the tax assessment was not such a minor, technical violation, in any event. *See Schwartz,* 954 F.2d at 574–75.

ruptcy, the state trial judge ordered the immediate completion of the trial. The jury then returned a verdict for the creditors in the amount of $90,000, and a trial on punitive damages against Kissinger was held over. The creditors filed a motion for retroactive relief from the stay in order to validate the judgment and for prospective relief to proceed with the punitive damages phase of the trial. The bankruptcy court annulled the automatic stay, and Kissinger appealed. *Id.* at 108.

The Ninth Circuit first set forth the established standard that scope of relief from the automatic stay for "cause" includes annulment of such stay, and that the bankruptcy court has "wide latitude" in crafting such relief. It also, however, cited *Shamblin,* stating that retroactive relief should be " 'applied only in extreme circumstances.' " *Id.* at 109 (quoting *Shamblin,* 890 F.2d at 126.)

It then ruled that the following circumstances justified retroactive annulment of the automatic stay:

> The [bankruptcy] court first found that there would have been cause to lift the stay prospectively at the time of the Chapter 11 filing because: the state court claim was sufficiently large such that it would have to be resolved before Kissinger could complete a reorganization; Kissinger was able to defend himself in the state court action; and Kissinger's decision to file a Chapter 11 petition just before the state court action was to go to the jury appeared to be in bad faith. Additionally, the bankruptcy court found that there was additional cause to annul the stay retroactively to the time of the filing because: the failure to obey the stay was caused by the state court judge, not the creditor; and not annulling the stay would either lead to nonsensical results, by submitting the same case to the same jury that had just

rendered a decision, or impose an unwarranted hardship on the creditors, since retrial would be costly.

*Kissinger,* 72 F.3d at 109.

Although the court paid lip service to "extreme circumstances," the circumstances described in *Kissinger* were not "extraordinary"; in other words, if "extreme circumstances" was the standard, *Kissinger* failed to reach that threshold. To the contrary, the *Kissinger* court simply balanced the equities, including the prejudice to both sides, the inequitable conduct of Kissinger, the lack of blame on the part of the creditors, and the inconvenience to the courts and parties by not granting such practical relief.

*Nat'l Envtl. Waste Corp.* is a good example of the Ninth Circuit's departure from the extreme circumstances standard. Not only does it omit mention of the limiting language, it clearly states that the analysis for retroactive annulment entails "weighing the equities" on a "case by case" basis, in which the bankruptcy court has "wide latitude" that will not be upset in the absence of abuse of discretion. *Nat'l Envtl. Waste Corp.,* 129 F.3d at 1054–55. All of these phrases are inconsistent with "extreme" or "extraordinary" circumstances.

*Nat'l Envtl. Waste Corp.* rejects the contention that anything but a balancing test applies, which is fundamentally at odds with the more limiting standard:

> Many courts have focused on two factors in determining whether cause exists to grant relief from the stay: (1) whether the creditor was aware of the bankruptcy petition; and (2) whether the debtor engaged in unreasonable or inequitable conduct, or prejudice would result to the creditor . . . .
>
> Newco asserts that the City's knowledge of the bankruptcy and its own in-

nocence of egregious conduct should be dispositive in this case. However, we have never held these two factors to be dispositive; instead we have engaged in a case by case analysis. . . .

Although the conduct of neither·party was exemplary, . . . we find that the bankruptcy court did not abuse its discretion in weighing the equities in favor of the City . . . . These unusual circumstances support the bankruptcy court's decision. . . .

We conclude, in light of all the factors involved, that the bankruptcy court did not abuse its discretion in granting the City retroactive annulment of the automatic stay.

*Id.* at 1055–56. *See also Palm v. Klapperman (In re Cady)*, 266 B.R. 172, 178–79 (9th Cir. BAP 2001), *aff'd*, 315 F.3d 1121 (9th Cir.2003) (applying a balancing-of-the-equities test).

We are mindful that a divided BAP panel in *Aheong v. Mellon Mortg. Co. (In re Aheong)*, 276 B.R. 233, 250 (9th Cir. BAP 2002), repeated the "extreme circumstances" language from *Shamblin–Kissinger* in affirming a stay annulment. However, it affirmed annulment based on the equities of the case and without determining that such facts were indeed "ex-

treme."[9] The reference to the more restrictive standard was probably dictum because *Aheong* did not mention the Ninth Circuit's controlling test from *Nat'l Envtl. Waste Corp.* Dictum in a BAP opinion, which reaches a plainly correct result but which would eviscerate a controlling Ninth Circuit test, is determinative only of a need for clarification.

■ Based on the foregoing analysis, we conclude that the proper standard for determining "cause" to annul the automatic stay retroactively is a "balancing of the equities" test. *Nat'l Envtl. Waste Corp.*, 129 F.3d at 1055.[10]

■ While a mechanistic application of factors is inappropriate in making this determination, such factors may be considered as an aid to the court in weighing the equities. The general trend has been to focus on two factors in determining whether cause exists to annul the stay: "(1) whether the creditor was aware of the bankruptcy petition; and (2) whether the debtor engaged in unreasonable or inequitable conduct, or prejudice would result to the creditor." *See Nat'l Envtl. Waste Corp.*, 129 F.3d at 1055. These two factors are not dispositive. In addition, courts employ many other factors, which further

---

**9.** Indeed, the facts in *Aheong* made a good case for "cause," but were hardly "extreme." There, we affirmed the bankruptcy court's retroactive annulment of a state court order granting a creditor relief in a foreclosure action where neither the creditor nor the state court had received notice of the debtor's intervening bankruptcy. *Id.*, 276 B.R. at 236–37. Although both sides had delayed acting on the stay relief matter, and subsequent bankruptcy petitions had been filed, we agreed with the bankruptcy court's findings that annulling the stay was justified on the equities of the case, because not to do so would harm the creditor and to do so would not unjustly harm the debtor or other creditors. *Id.* at 252. Therefore, while citing *Shamblin–Kissinger*, ultimately, we held that

the decision was "left to the sound discretion of the bankruptcy court," which had not abused its discretion. *Id.* at 250, 252.

**10.** In determining whether to grant prospective relief from stay for "cause," courts sometimes consider equitable factors such as whether the debtor filed the case in bad faith. 3 *Collier on Bankruptcy* ¶ 362.07[3][a], at 362–84 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev.2003). While there is some overlap between what constitutes cause to annul the stay versus cause to grant prospective relief from stay, the focus in annulling the stay should be on whether retroactive relief is justified, which may involve different considerations than prospective relief from stay.

examine the debtor's and creditor's good faith, the prejudice to the parties, and the judicial or practical efficacy of annulling the stay. We suggest the following factors to consider when deciding whether to annul the stay:

1. Number of filings;

2. Whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors;

3. A weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser;

4. The Debtor's overall good faith (totality of circumstances test): *cf. Fid. & Cas. Co. of N.Y. v. Warren (In re Warren)*, 89 B.R. 87, 93 (9th Cir. BAP 1988)(chapter 13 good faith);

5. Whether creditors knew of stay but nonetheless took action, thus compounding the problem;

6. Whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules;

7. The relative ease of restoring parties to the *status quo ante;*

8. The costs of annulment to debtors and creditors;

9. How quickly creditors moved for annulment, or how quickly debtors moved to set aside the sale or violative conduct;

10. Whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief;

11. Whether annulment of the stay will cause irreparable injury to the debtor;

12. Whether stay relief will promote judicial economy or other efficiencies.

 Mindful that such lists are capable of being misconstrued as inviting arithmetic reasoning, we emphasize that these items are merely a framework for analysis and not a scorecard. In any given case, one factor may so outweigh the others as to be dispositive.

### 3. The Bankruptcy Court's Reliance on § 549(c)

 In this case, the bankruptcy court did not balance the equities, but based its relief solely on its conclusion that Lien's bona fide purchaser status under § 549(c) was either cause for relief from, or an exception to, the automatic stay.

The bankruptcy court stated: "I think it's clear from [*Schwartz* ] that Congress ... drafted [§ ] 549(c) to ... protect the good faith purchaser where a sale might have been otherwise void under Section 362." Tr. of Proceedings (Jan. 22, 2002), at 114. In light of *Mitchell,* which was decided after the bankruptcy court's ruling, we conclude that this analysis was incorrect.

*Mitchell* concluded that § 549(c) could only be implicated in an avoidance action under § 549(a), and could not be used to validate a postpetition foreclosure sale to a bona fide purchaser, stating:

[Section] 549 protects the estate from unauthorized transfers by the debtor. Congress saw fit to protect BFPs in § 549 but not in § 362, presumably expressing its intent to afford greater protection to BFPs who purchase from debtors than to those purchasing at sales violating the automatic stay.

.... *Schwartz's* observations about the applicability of § 549(c) pertain only to situations covered by both § 362 and

§ 549, and "Section 549 applies to unauthorized transfers of estate property *not otherwise prohibited by the Code.*" 954 F.2d at 573–574 (citations omitted; emphasis added). The foreclosure sale here *was* otherwise prohibited by § 362(a), and [the creditor] suggests no application of § 549 apart from the BFP defense it hopes to transmute into a stay exception.....

It is obvious that Congress knows how to create an exception to § 362, as it has provided eighteen of them. Transfer of estate property to a BFP is not among them. Section 549(c) is a defense to an avoidance action by the trustee, no more, no less....

*Mitchell,* 279 B.R. at 843–44.

Because the foreclosure sale in *Mitchell* was void, we further held that the subsequent perfection of the purchaser's title by recordation of the deed could not thereafter validate it. *Id.* at 844.

*Mitchell* governs the interplay of sections 362(d)(1) and 549(c) at issue in this case. Here, Lien sought annulment of the automatic stay based on his bona fide purchaser status. Because the Bank's trustee's sale violated the automatic stay and was void, transfer of good title to Lien was impossible. Section 549(c) is not an exception to the automatic stay, and Congress did not provide a special protection for a bona fide purchaser in § 362. *Mitchell,* 279 B.R. at 843–44. Accordingly, such status, standing alone, cannot constitute "cause" for stay relief under § 362(d)(1). Similarly, Lien's recordation of the trustee's deed could not be used to bootstrap and validate an otherwise void deed. *See Mitchell,* 279 B.R. at 844.

In summary, a court abuses its discretion when determining "cause" under § 362(d) "when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them." *Perry v. Warner (In re Warner),* 247 B.R. 24, 25 (1st Cir. BAP 2000) (citation omitted). Here, the bankruptcy court erroneously held that Lien's bona fide purchaser status alone was "cause" for annulment of the stay. In doing so, it committed reversible error.

### D. Sanction Without Due Process Was an Abuse of Discretion

Hobdy contends that the court abused its discretion by *sua sponte* imposing a $600 sanction without giving him proper notice and an opportunity to defend himself. We agree that the court exceeded its authority, if understandably out of frustration with Hobdy's style of advocacy.

The court used its authority under L.R. 1002–2, Local Bankruptcy Rules for the Central District of California, which incorporate Rule 9011. Under Rule 9011, a court may award "an appropriate sanction," on its own motion, but only if it first issues an order to show cause describing the specific misconduct. Fed. R. Bankr.P. 9011(c)(1)(B). The record reveals that such procedural protection was not afforded Hobdy.

A court also has inherent authority to sanction a party who willfully disobeys court orders or acts in bad faith, such as willful improper conduct. *Deville,* 280 B.R. at 495. The court must, however, make an explicit finding of bad faith or willful conduct. *Knupfer v. Lindblade (In re Dyer),* 322 F.3d 1178, 1196 (9th Cir. 2003) (citing *Fink v. Gomez,* 239 F.3d 989, 992–93 (9th Cir.2001)). Here, the court pointed out Hobdy's alleged misrepresentations to the court, but did not disclose whether the conduct was actionably "egregious" or was only "mere negligence or

recklessness" conduct, which is not sanctionable. *See Dyer*, 322 F.3d at 1196.

■ Furthermore, although inherent sanctions may be imposed *sua sponte*, due process must nonetheless be provided. *Deville*, 280 B.R. at 495–96. The fundamental question is whether Hobdy received any type of notice that was reasonably calculated, under all of the circumstances, to apprise him of the pendency of the court's action and afford him an opportunity to present his objections. *Id.* at 496 (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)).

■ Although the court warned Hobdy at the initial hearing on the stay relief motion that he was in the sanctioning danger zone for making statements without proper support, the actual, spontaneous imposition of sanctions followed a separate incident. The court was distressed that Hobdy's motion for reconsideration stated that stay relief had been granted on the basis of Cal. Civ.Code § 2924h(c). The following pertinent discussion ensued:

THE COURT: This motion for reconsideration is extremely annoying since you have misquoted and misstated what went on at the earlier hearing. And if you ever file incorrect pleadings like this again, you can expect to be seriously sanctioned.

. . . .

MR. HOBDY: Your Honor, I would like to be heard with respect to the motion for reconsideration, briefly.

THE COURT: Just make sure you don't make any misstatements or I will sanction you this afternoon.

MR. HOBDY: . . . . First of all Your Honor, I made no misrepresentation to this court with respect to the motion for reconsideration.

THE COURT: Hang on . . . . Let me read the first sentence . . . . I did not make that holding.

MR. HOBDY: Yes you did, Your Honor.

THE COURT: That was not the basis of my ruling.

MR. HOBDY: Your Honor, if I can get you to—

THE COURT: All right, five hundred dollar ($500) sanction. This, this is over. . . . I'm having no further discussion. . . . That's it. No. I'm not going to hear another word.

MR. HOBDY: The only thing I wanted to add was a statement—

THE COURT: I am not going to—

MR. HOBDY: in appeal with respect to the order for the sanctions

THE COURT: All right, your sanctions are six hundred dollars ($600).

Tr. of Proceedings (March 25, 2002), at 3–6.

The court abused its discretion in imposing a sanction on Hobdy without giving him the opportunity to explain, either verbally or in writing, why he believed his pleadings were correct. In addition, in light of the confusing procedural posture, in which the court determined Lien's rights to be superior to the bankruptcy trustee's on the basis of a flawed conclusion that his bona fide purchaser status was an exception to, or cause to annul, the automatic stay, Hobdy's motion to reconsider the court's ruling was arguably correct.

Therefore, we reverse and remand because the court abused its discretion in imposing the sanction without giving Hobdy notice and due process.

If, on remand, the court reexamines its decision, it should do so in light of *Dyer*. In *Dyer*, the Ninth Circuit concluded that a bankruptcy court cannot use its inherent

or civil contempt authority under § 105(a)[11] to award "significant punitive damages," *Dyer*, 322 F.3d at 1182, 1197, but recognized that, in some circumstances, a bankruptcy court may use such authority to impose " 'relatively mild' noncompensatory fines." *Id.* at 1193 (citation omitted).

 The implications of *Dyer* in this appeal are apparent. Rule 9011(c)(2) provides that the court may impose a "penalty" that is "limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Bankr.P. 9011(c)(2). Civil in nature, the Rule 9011(c)(2) penalty parallels civil contempt and inherent sanctions. It also has the same dual aspects of (1) due process and (2) the imposition of a sanction amount appropriate to the purpose.[12] We hold, therefore, that under Rule 9011(c)(2) a court may not impose a deterrence penalty that is a "serious penalty" in the nature of criminal contempt; only an amount necessary to deter the misconduct may be awarded.

Here, the court sanctioned Hobdy $600 to prevent his alleged factual misrepresentations to the court. On remand, the court may reexamine whether this was an appropriate penalty.

### CONCLUSION

The bankruptcy court's finding that Lien was a bona fide purchaser was not clearly erroneous. The court erred, however, in determining that bona fide purchaser status, standing alone, was either an excep-

tion to the stay or "cause" to annul the stay. In addition, the bona fide purchaser defense of § 549(c) is inapplicable to a § 362 violation. Consequently, the court's order granting relief, which was based solely on that inapplicable predicate, is REVERSED. The case is further REMANDED so that the bankruptcy court may apply a balancing-of-the-equities test to determine if retroactive stay relief was justified.

Due process requires that a person to be sanctioned by the court must receive notice and opportunity to object, which was not afforded Hobdy in this case. The court's sanction order is therefore REVERSED and REMANDED for further proceedings consistent with this opinion.

11. Section 105(a) provides:
 The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from sua sponte, taking any action or making any determination necessary or appro-

priate to enforce or implement court orders or rules, or to prevent an abuse of process. 11 U.S.C. § 105(a).

12. In *Deville,* we determined that an appropriate deterrence penalty may still be greater than the amount of compensatory damages. *See Deville,* 280 B.R. at 498.