FILED

OCT 2 2013

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. NC-12-1322-JuPaD |
| MARITESS TAMONDONG MENDAROS, | Bk. No. NC-11-73139-RLE |
| Debtor. | |
| MARITESS TAMONDONG MENDAROS, | |
| Appellant, | |
| v. | M E M O R A N D U M* |
| JPMORGAN CHASE BANK, N.A., | |
| Appellee. | |

Argued and Submitted on September 20, 2013
at San Francisco, California

Filed - October 2, 2013

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Roger L. Efremsky, Bankruptcy Judge, Presiding

Appearances:     Appellant Maritess Mendaros argued pro se; Kerry
Ann Moynihan, Esq., of Bryan Cave LLP, argued for
appellee JPMorgan Chase Bank, N.A.

Before:  JURY, PAPPAS, and DUNN, Bankruptcy Judges.

---

     * This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

-1-

Chapter 7[1] debtor, Maritess Tamondong Mendaros, appeals from the bankruptcy court's order granting the motion of JPMorgan Chase Bank, N.A. (Chase), which sought annulment of the automatic stay nunc pro tunc to validate a postpetition foreclosure sale of debtor's property (Motion).  We AFFIRM.

## I.  FACTS

On December 2, 2005, debtor and Edwin Mendaros[2] (collectively, Borrowers), executed and delivered a promissory note made payable to Washington Mutual Bank, FA (WaMu) in the original principal amount of $1,860,000 (the Note).  The Note was secured by an interest in Borrower's real property located on Deer Hollow Drive, Danville, California (the Property) evidenced by a Deed of Trust dated December 2, 2005, and recorded on December 13, 2005, in the official records of Contra Costa County as Document Number 2005-0476726 (the Deed of Trust).

On September 25, 2008, the Office of Thrift Supervision closed WaMu and the Federal Deposit Insurance Corporation (FDIC) was appointed as receiver.  On the same date, Chase entered into a Purchase and Assumption Agreement with the FDIC to purchase certain assets, including all loans and loan commitments, of WaMu.

By March 2009, Borrowers were in default under the terms of

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and "Rule" references are to the Federal Rules of Bankruptcy Procedure.

[2] Edwin Mendaros is either debtor's husband or her son.  It makes no difference for purposes of this appeal.

the Note in the approximate amount of $91,621.35. On March 9, 2009, Chase recorded a notice of default as Document No. 09-48725.

On April 27, 2010, Edwin filed a chapter 7 petition, Case No. 10-44753, listing the Property as his residence.

On May 19, 2010, the bankruptcy court dismissed the case because Edwin failed to file required documents, including schedules.

Seven days later, on May 26, 2010, Edwin filed a second chapter 7 petition, Case No. 10-46045. Edwin listed the prior bankruptcy case, listed the Property as his residence and listed a joint tenancy interest in the Property.

On August 4, 2010, Chase obtained relief from stay to file a notice of sale and proceed with its foreclosure of the Property.[3]

On September 1, 2010, Chase recorded a notice of trustee sale as Document No. 10-184801 setting the foreclosure sale for September 22, 2010.

On September 21, 2010, one day prior to the scheduled foreclosure sale, debtor filed a chapter 13 petition, Case No. 10-70804.

On October 7, 2010, the bankruptcy court dismissed her case because she failed to file the required documents.

On December 19, 2011, debtor filed her chapter 13 petition

---

[3] On January 21, 2011, the case was initially closed without a discharge because Edwin failed to file the financial management course certificate. The case was reopened on March 17, 2011, and Edwin obtained a discharge on April 13, 2011.

at 9:21 a.m.

On the same date, the foreclosure sale took place at 10:28 a.m. At the time of the foreclosure sale, Borrowers were forty-two months in default and owed over $2 million on the Loan.

The chapter 13 trustee moved to have debtor's case converted to one under chapter 7, which the bankruptcy court granted by order entered on January 11, 2012.

On February 22, 2012, Chase filed its Motion to validate the foreclosure sale, relying on the factors set forth in Fjeldsted v. Lien (In re Fjeldsted), 293 B.R. 12, 24 (9th Cir. BAP 2003) for annulment of the stay, and § 362(d)(4), alleging debtor's bankruptcy was filed in bad faith. In light of the multiple bankruptcy filings affecting the Property, Chase's Motion requested that the order granting relief be binding in any other bankruptcy case purporting to affect the Property and as to debtor for a period of 180 days.

On March 6, 2012, debtor filed her opposition to the Motion. Debtor requested that Chase's Motion be heard together with her motion for an order requiring Chase to show cause for its violation of the stay. Debtor also stated that, in the meantime, she would attempt to negotiate a settlement with Chase by entering into a loan modification that would allow her to retain her home.

On March 14, 2012, debtor appeared at the preliminary stay relief hearing and asserted that she had evidence that notice of the automatic stay had been given to the foreclosure trustee, Quality Loan Service (QLS), prior to the foreclosure sale.

-4-

Debtor also alleged that she had documents from Chase or its agent indicating that the sale would be reversed.  As a result, the bankruptcy court continued the hearing so that the parties could file supplemental declarations with supporting documentation.

On March 16, 2012, debtor filed her declaration stating that she authorized her daughter, Kathryn Mendaros, to contact QLS about her bankruptcy filing.  Debtor also alleged that she was never contacted through telephone or in person by the lender and/or its agents prior to thirty days before recording of the notice of default or to assess her financial situation as required by Cal. Civ. Code § 2923.5.[4]

---

[4] Cal. Civ. Code § 2923.5 provides in relevant part:

(a)(1) A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent may not record a notice of default pursuant to Section 2924 until both of the following:

(A) Either 30 days after initial contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (e).

(B) The mortgage servicer complies with paragraph (1) of subdivision (a) of Section 2924.18, if the borrower has provided a complete application as defined in subdivision (d) of Section 2924.18.

(2) A mortgage servicer shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure.  During the initial contact, the mortgage servicer shall advise the borrower that he or she has the right to request a

(continued...)

On the same date, debtor filed Kathryn's declaration. Kathryn declared that she called QLS at 10:32 a.m. on December 19, 2011, and faxed it a copy of the bankruptcy filing. Kathryn also stated that she made follow-up calls to QLS and that she was assured that the foreclosure sale would be reversed due to the bankruptcy filing.

Chase submitted the supplemental declaration of Bounlet Louvan, the Foreclosure Legal Liaison for QLS, who confirmed that the foreclosure sale occurred at 10:28 a.m. Louvan also declared that a telephone call was received from debtor at 10:58 a.m. on December 19, 2011, after the foreclosure sale had taken place. Chase also filed a Relief from Stay Cover Sheet which reflected that the pre-foreclosure principal balance exceeded $2 million and that the Loan was due for the July 1, 2008 payment, with a total delinquency of approximately $281,958.

At the final hearing on March 28, 2012, debtor and Chase appeared through counsel. After balancing the equities and considering the factors in Nat'l Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp.), 129 F.3d 1052, 1055

[4](...continued)
subsequent meeting and, if requested, the mortgage servicer shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose. In either case, the borrower shall be provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency. Any meeting may occur telephonically.

(9th Cir. 1997), and Fjeldsted, the bankruptcy court ruled in favor of Chase and annulled the automatic stay retroactively to the petition date.[5]

On May 29, 2012, the bankruptcy court entered the order granting Chase's Motion. Debtor timely appealed.

On November 28, 2012, the Clerk issued a Notice of Possible Mootness. After considering the responses of both parties, the Panel issued an order finding the Clerk's Order re Mootness satisfied.

## II.   JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(G). We have jurisdiction under 28 U.S.C. § 158.

## III.   ISSUE

Whether the bankruptcy court abused its discretion in annulling the automatic stay.

## IV.   STANDARD OF REVIEW

A bankruptcy court's decision to grant retroactive relief from the automatic stay is reviewed for an abuse of discretion. In re Nat'l Envtl. Waste Corp., 129 F.3d at 1054. A bankruptcy court abuses its discretion if it applied the wrong legal standard or its findings were illogical, implausible or without

_____

[5] At the hearing, the bankruptcy court referenced proceedings and documents with respect to Edwin's bankruptcy filings which have not been included in the Designation of Record or Excerpts of Record. On October 24, 2012, Chase filed a motion requesting the Panel to take judicial notice of the relevant documents in Edwin's bankruptcies, Case Nos. 10-44753 and 10-46045. Pursuant to Fed. R. Evid. 201, we take judicial notice of the documents and grant the motion.

-7-

support in the record. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

## V. DISCUSSION

When debtor filed her bankruptcy petition the automatic stay under § 362(a) went into effect. Here, the postpetition foreclosure violated the stay. See § 362(a)(3). Actions taken in violation of the automatic stay are void. Schwartz v. United States (In re Schwartz), 954 F.2d 569, 571–72 (9th Cir. 1992). However, an action taken in violation of the automatic stay may be declared valid if cause exists for retroactive annulment of the stay. Id. at 573.

Section 362(d), which empowers the bankruptcy court to annul the stay, provides in relevant part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

§ 362(d); In re Schwartz, 954 F.2d at 572 ("[S]ection 362(d) gives the bankruptcy court wide latitude in crafting relief from the automatic stay, including the power to grant retroactive relief from the stay.").

In analyzing whether "cause" exists to annul the stay under § 362(d)(1), the bankruptcy court is required to balance the equities of the creditor's position in comparison to that of the debtor. In re Nat'l Envtl. Waste Corp., 129 F.3d at 1055. Under this approach, the bankruptcy court considers (1) whether the creditor was aware of the bankruptcy petition and automatic

-8-

stay, and (2) whether the debtor engaged in unreasonable or inequitable conduct. Id.

Additional factors for consideration include the number of bankruptcy filings by the debtor; the extent of any prejudice, including to a bona fide purchaser; the debtor's overall good faith; the debtor's compliance with the Code; the relative ease of restoring parties to the status quo ante; the costs of annulment to debtors and creditors; how quickly the creditor moved for annulment; whether annulment will cause irreparable injury to the debtor; and whether stay relief will promote judicial economy or other efficiencies. In re Fjeldsted, 293 B.R. at 25. "In any given case, one factor may so outweigh the others as to be dispositive." Id.

On appeal, debtor does not take issue with the bankruptcy court's identification of the relevant factors for annulment of the stay, or for that matter, the application of those factors to the facts of this case. Based upon our review of the record, and construing debtor's pro se briefs liberally, we conclude the bankruptcy court did not abuse its discretion in annulling the automatic stay to validate the postpetition foreclosure sale.

In applying the first factor under In re Nat'l Envtl. Waste Corp. to the evidence presented, the bankruptcy court found that Chase was not aware of debtor's bankruptcy case before the foreclosure. This finding was supported by debtor's failure to produce any documentary evidence suggesting that Chase or QLS had been notified of her bankruptcy filing prior to the foreclosure. Instead, the record shows that debtor's daughter, Kathryn, notified QLS at 10:32 a.m. about the filing, which was

-9-

after the foreclosure sale took place. Louvan's declaration confirmed that QLS did not receive a telephone call from debtor or her daughter prior to the foreclosure sale. There is no evidence in the record regarding any other forms of communication such as a fax that were sent to QLS or Chase prior to the sale.

In addition, the bankruptcy court found that debtor engaged in unreasonable or inequitable conduct that showed she was utilizing the bankruptcy process to delay or hinder Chase. The record amply supports these findings: (1) the bankruptcy filings by co-debtor Edwin; (2) debtor's two bankruptcy filings (including the instant case); (3) debtor's failure to comply with chapter 13 requirements, which resulted in the conversion of this case; and (4) debtor's loan being forty-two months in default. These findings overlap with some of the Fjeldsted factors: the number of bankruptcy filings by debtor, debtor's overall good faith and debtor's compliance with the Code. The bankruptcy court properly concluded that these factors and debtor's one-sided use of the bankruptcy process weighed in favor of annulment.

Moreover, regarding the costs of annulment to debtor and Chase, the bankruptcy court gave consideration to debtor's right to bring an action in the state court for any alleged wrongful acts in violation of Cal. Civ. Code § 2923.5. Chase's counsel acknowledged that debtor's right was preserved, and the bankruptcy court repeatedly stated on the record that the annulment of the stay did not mean that the foreclosure was valid under California law.

-10-

The bankruptcy court further found that Chase had not delayed in bringing its motion to annul the stay nunc pro tunc. There is nothing in the record that suggests otherwise, and the motion to annul the stay was filed a little more than two months after the sale took place.

Finally, the court observed that debtor had ample opportunity to present her case, but did not meet her burden of showing that she faxed or telephoned Chase or QLS regarding her bankruptcy filing prior to the foreclosure sale.

In the end, the court concluded that the Nat'l Envtl. Waste Corp. and Fjeldsted factors weighed in Chase's favor. This balancing was within the wide latitude accorded to the bankruptcy court and was not an abuse of discretion. In re Schwartz, 954 F.2d at 572; In re Fjeldsted, 293 B.R. at 21.

## VI.   CONCLUSION

For all these reasons, we AFFIRM.

-11-