NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | BAP No.   AZ-11-1633-JuHlD |
| | ) | |
| MATHON FUND, LLC, et al., | ) | Bk. No.   2:05-bk-27993-GNB |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| GEORGE AND SUSAN TINDALL, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | M E M O R A N D U M* |
| | ) | |
| MATHON FUND, LLC, et al., | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Argued and Submitted on September 20, 2012
at Phoenix, Arizona

Filed - October 9, 2012

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable George B. Nielsen, Jr., Bankruptcy Judge, Presiding
_____

Appearances:    Sean Patrick O'Brien, Esq. of Gust Rosenfeld PLC
argued for appellants George and Susan Tindall;
Neal H. Bookspan, Esq. of Jaburg & Wilk, P.C.
argued for appellee Mathon Fund, LLC.
_____

Before:   JURY, HOULE**, and DUNN Bankruptcy Judges.

---

   * This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

   ** Hon. Mark D. Houle, Bankruptcy Judge for the Central District of California, sitting by designation.

George and Susan Tindall appeal from the bankruptcy court's order denying their Motion to Confirm that the Automatic Stay Does Not Apply, or in the Alternative, to Allow for Nunc Pro Tunc Relief From the Automatic Stay (the "Motion for Relief"). We AFFIRM.

## I.  FACTS

On July 14, 2003, Aircraft Seal & Gasket Corporation ("ASGC"), as maker, entered into a promissory note (the "Note") with Mathon Fund, LLC ("Mathon" or "Debtor") in the principal amount of $500,000.  The repayment terms provided for payment of $625,000 in four months.  Herbert Menold ("Herbert") and Wilbur Hanley ("Wilbur"), principals of ASGC, personally guaranteed the loan.  The loan was secured with business assets of ASGC, and Herbert's guarantee was secured by real property owned by Herbert.

In addition, Herbert's wife, Rene Role Menold ("Rene"), executed a Deed of Trust dated July 16, 2003 (the "Mathon Deed of Trust"), pledging her sole and separate property located in Corona del Mar, California (the "Property") as collateral for the Note.  On August 12, 2003, the Mathon Deed of Trust was filed as Instrument No. 2003-000970041 with the Recorder's Office for the County of Orange, California.

ASGC defaulted on the loan.  Herbert and Wilbur executed an extension agreement on March 26, 2004, increasing the repayment amount to $771,250.

In February 2005, Rene contracted to sell the Property to the Tindalls.  In March 2005, Mathon received a letter from Chicago Title Insurance Company advising that the Menolds were

-2-

selling the Property to the Tindalls and requesting that Mathon release the Mathon Deed of Trust. Mathon declined the request because the Note had not been paid off.

During this time frame, the Arizona Corporation Commission commenced a state court action against Mathon. On April 5, 2005, James Sell ("Sell") was appointed as the receiver for Mathon in that action.

**The California Action**

On July 20, 2005, Rene filed suit against Mathon in the United States District Court, Central District of California (Case No. SACV05-698-AHS), alleging that Mathon's lien against the Property was invalid and requesting, among other things, an order rescinding the lien (the "California Action").

Rene applied for permission to serve Mathon pursuant to Civil Rule 4(h)(1)[1] which authorizes service of process on a limited liability company under the law of the state in which the federal district is located. Cal. Corp. Code § 17061(c)(1)[2]

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, "Rule" references are to the Federal Rules of Bankruptcy Procedure, and "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] This section provides in relevant part:

If an agent for service of process has resigned and has not been replaced or if the designated agent cannot with reasonable diligence be found at the address designated for personal delivery of the process, and it is shown by affidavit to the satisfaction of the court that process against a limited liability company or foreign limited liability company cannot be served with reasonable diligence upon the designated agent by hand
(continued...)

-3-

authorizes service on a foreign limited liability company by and through service on the California Secretary of State. The district court entered an order granting Rene's request.

Mathon failed to appear or respond to Rene's complaint. Accordingly, the clerk entered a default against it on September 13, 2005. Rene subsequently moved the district court to enter a default judgment against Mathon declaring its lien against the Property invalid. The district court entered a default judgment against Mathon on November 28, 2005. Rene recorded the default judgment in the county records, which cleared Mathon's purported lien from the Property's title record.

**The Sale of the Property to the Tindalls**

The Tindalls, relying on a clear title report, proceeded to purchase the Property for $1,750,000. In December 2005, Rene transferred the Property to the Tindalls.

The Tindalls financed their purchase of the Property through Provident Savings Bank ("Provident"), which recorded its

---

[2](...continued)
in the manner provided in Section 415.10, subdivision (a) of Section 415.20, or subdivision (a) of Section 415.30 of the Code of Civil Procedure, the court may make an order that the service shall be made upon a domestic limited liability company or upon a registered foreign limited liability company by delivering by hand to the Secretary of State, or to any person employed in the Secretary of State's office in the capacity of assistant or deputy, one copy of the process for each defendant to be served, together with a copy of the order authorizing the service. Service in this manner shall be deemed complete on the 10th day after delivery of the process to the Secretary of State.

Deed of Trust against the property on that same date. Provident paid off the first deed of trust of Washington Mutual, but did not pay off the Mathon Deed of Trust. In December 2005, Provident sold the loan and deed of trust relating to the Property to Countrywide Home Loans ("Countrywide").

### The Bankruptcy Filing

Unbeknownst to Rene, before the district court entered the default judgment in the California Action, Mathon filed a voluntary petition under chapter 11 on November 13, 2005. Sell, who was acting as receiver, was appointed as conservator for Mathon.

### The Adversary Proceeding

On August 25, 2006, Countrywide filed an adversary complaint against Mathon seeking a determination as to its legal interest in the Property vis-a-vis Mathon. Mathon answered the complaint on September 26, 2006. On that same date, Mathon filed its third-party complaint against Ticor Title Insurance Company of California, Ticor Title, and United Title Company (collectively, the "Title Companies"), Herbert and Rene, and the Tindalls, as well as a counterclaim against Countrywide. In its counterclaim and third-party complaint, Mathon sought a determination as to whether the Mathon Deed of Trust was valid and remained a lien against the Property and whether the Mathon Deed of Trust, which had been recorded prior in time to Countrywide's lien, had priority over Countrywide's lien.

In Count Five, asserted only against Rene, Mathon alleged that entry of the default judgment in the California Action violated the automatic stay. In connection with Count Five,

-5-

Mathon requested a declaration that the judgment was void and also sought damages for the stay violation.

Counsel representing both the Title Companies and the Tindalls filed an answer to the third-party complaint on October 20, 2006. Herbert and Rene answered on November 6, 2006.

On May 30, 2008, Mathon filed a motion for partial summary judgment on Count Five of its third-party complaint. On August 14, 2008, the Menolds responded by filing a stipulation wherein Rene agreed that the judgment obtained in the California Action was void. As part of the stipulation, Rene was dismissed from the adversary proceeding without prejudice.

On August 15, 2008, the bankruptcy court entered an order stating that the default judgment entered against Mathon on November 28, 2005 by the district court was void.

### The Tindalls' Motion for Relief

Over three years later, on August 25, 2011, the Tindalls filed the Motion for Relief. The Tindalls argued that the prepetition entry of default against Mathon in the California Action rendered Mathon's claimed lien invalid under Ninth Circuit law. The Tindalls reasoned that because a defaulting party has no right to dispute the issue of liability after entry of default, it followed that the mere entry of default conclusively and irrevocably established that Mathon's lien was invalid. Alternatively, the Tindalls sought nunc pro tunc relief from stay for entry of the default judgment based on essentially the same reasoning. In their reply, the Tindalls maintained that nunc pro tunc relief was appropriate under the

-6-

factors set forth in Fjeldsted v. Lien (In re Fjeldsted), 293 B.R. 12 (9th Cir. BAP 2003).

On October 25, 2011, the bankruptcy court held a hearing on the Motion for Relief. Debtor argued that it was inequitable to grant the relief requested because the motion was untimely. Debtor maintained that the Tindalls had been parties to the adversary proceeding since 2006 but waited more than three years after the stipulation was entered into and more than five years into the litigation to bring their motion. Debtor argued that it would be "very prejudicial" to it and to the remaining creditors when numerous out-of-state depositions had been taken, the deadline for filing summary judgment motions had passed, and the parties had engaged in extensive briefing on subrogation.

The bankruptcy court determined that it was not appropriate to grant nunc pro tunc relief under the circumstances of the case. The court found that the Tindalls, who were not parties to the California Action, were in essence seeking to set aside the stipulation entered into between Rene and Sells stating that the default judgment was void. The court observed that the Tindalls waited more than three years after the stipulation was entered into and more than five years after the adversary proceeding was filed to seek retroactive relief from the stay. In addition, the court considered that the unwinding of the stipulation at that late date would have a negative effect on the creditors of the estate. In the end, the bankruptcy court stated that "the relief requested here really is an end run around the stipulation and that's why I'm going to deny it." Hr'g Tr. at 16:23-24, Oct. 25, 2011.

-7-

The bankruptcy court entered the order denying the Tindalls' Motion for Relief on October 26, 2011. The Tindalls timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(G). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Whether the bankruptcy court abused its discretion in denying the Tindalls' motion for the retroactive annulment of the stay.

## IV. STANDARD OF REVIEW

A bankruptcy court's decision to deny retroactive relief from the automatic stay is reviewed for an abuse of discretion. Nat'l Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp.), 129 F.3d 1052 (9th Cir. 1997). A bankruptcy court abuses its discretion if it applied the wrong legal standard or its findings were illogical, implausible or without support in the record. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

## V. DISCUSSION

When Mathon filed its bankruptcy petition the automatic stay under § 362(a) went into effect. "The automatic stay is self-executing" and "sweeps broadly, enjoining the commencement or continuation of any judicial . . . proceedings against the debtor. . . ." Gruntz v. Cnty. of L.A. (In re Gruntz), 202 F.3d 1074, 1081-82 (9th Cir. 2000) (en banc). Here, the district court's entry of the default judgment after Mathon had filed its

-8-

bankruptcy case was a continuation of a judicial proceeding in violation of the stay. § 362(a)(1). Actions "taken in violation of the automatic stay are void." Id. at 1082 (citing Schwartz v. United States (In re Schwartz), 954 F.2d 569, 571 (9th Cir. 1992)).

However, under § 362(d)(1), the bankruptcy court has wide discretion to declare a default judgment taken in violation of the stay valid if "cause" exists for retroactive annulment of the stay. In re Schwartz, 954 F.2d at 572. In analyzing whether "cause" exists to annul the stay under § 362(d)(1), the bankruptcy court is required to balance the equities of the creditor's position in comparison with that of the debtor. In re Nat'l Envtl. Waste Corp., 129 F.3d at 1055. Under this approach, the bankruptcy court considers (1) whether the creditor was aware of the bankruptcy petition and automatic stay; and (2) whether the debtor engaged in unreasonable or inequitable conduct. Id. at 1055–56.

Additional factors for consideration include the number of bankruptcy filings by the debtor; the extent of any prejudice, including to a bona fide purchaser; the debtor's overall good faith; the debtor's compliance with the Code; the relative ease of restoring parties to the status quo ante; the costs of annulment to debtors and creditors; how quickly the creditor moved for annulment; whether annulment will cause irreparable injury to the debtor; and whether stay relief will promote judicial economy or other efficiencies. In re Fjeldsted, 293 B.R. at 25. "In any given case, one factor may so outweigh the others as to be dispositive." Id.; see also Williams v. Levi

-9-

(In re Williams), 323 B.R. 691 (9th Cir. BAP 2005). Balancing the equities of the case requires the bankruptcy court to reach an equitable conclusion rather than a factual or legal one. See Graves v. Myrvang (In re Myrvang), 232 F.3d 1116, 1121 (9th Cir. 2000) (citing Bank of Honolulu v. Anderson (In re Anderson), 833 F.2d 834, 836 (9th Cir. 1987) (per curiam) (appellate courts use the abuse of discretion standard to review bankruptcy court's equitable actions)).

On appeal, the Tindalls argue that the bankruptcy court incorrectly determined that: (1) their Motion for Relief was an attempt to overturn the stipulation; (2) the stipulation was binding on the Tindalls; and (3) as a result, the Tindalls were foreclosed from requesting nunc pro tunc relief. They also maintain that the court erred by refusing to recognize the effect of the prepetition entry of default which established that Mathon's lien was invalid and provided an additional ground for granting nunc pro tunc relief. We disagree with these contentions.

We first note that the Tindalls concede what the stipulation says, i.e., that the default judgment against Mathon was obtained in violation of the stay and is void. Hr'g Tr. at 3:4-6, Oct. 25, 2011. Therefore, it is not particularly relevant whether the stipulation was binding on the Tindalls for purposes of this appeal.

By the time the Tindalls' annulment request was made, the balance of equities had tipped heavily against the Tindalls because of their delay in seeking relief. The record shows that the Tindalls were parties to the third-party complaint and

counterclaim filed by Mathon since 2006. Yet, the Tindalls waited until five years into the litigation and three years after the court-approved stipulation to move for retroactive annulment of the stay. Why the Tindalls failed to take any action prior to when they did remains unexplained.[3]

The record shows that the bankruptcy court properly balanced the Tindalls' delay against the interests of Debtor and the other parties to the litigation. Since the beginning of the case, the parties expended fees and costs by taking out-of-state depositions and by engaging in extensive briefing on subrogation issues before the bankruptcy court. These actions were costly to the bankruptcy estate. The progression of the litigation for three years after the entry of the stipulation implicitly demonstrates that the parties relied on its declaration that the default judgment was void. Therefore, according to the bankruptcy court, under these circumstances, it was simply too late to allow the Tindalls to override the stipulation. We cannot say that the court abused its discretion in this analysis.

The bankruptcy court also balanced the impact of the Tindalls' relief request on the other creditors of the estate. The Tindalls argued that they were bona-fide purchasers of the Property and should not be "punished" to pay the other defrauded

---

[3] At the hearing on this matter, the Tindalls' attorney made an offer of proof that the delay was based on a number of pending motions that would obviate the need for their motion. As none of the relevant documents are in the record on appeal, we are unable to determine whether the Tindalls' delay was warranted, even assuming it was raised in the bankruptcy court and properly before us.

creditors of the Ponzi scheme implemented by Debtor. The court observed that in Ponzi scheme cases, the bankruptcy law sought to treat all the victims approximately the same. The court noted that this policy would be upset if it granted the Tindalls retroactive relief. Again, we cannot say that the court abused its discretion in this analysis.

Finally, the Tindalls sought retroactive annulment of the stay on the ground that the clerk's prepetition entry of default established Debtor's liability, and thus retroactive relief would allow the Tindalls to go back to the district court to seek reentry of the default judgment, which would be nothing more than a mere formality and ministerial act.[4] In considering the Tindalls' argument, the record shows that the bankruptcy court balanced the prejudice to Debtor of allowing strangers to the California Action to go back into the district court to seek reentry of the default judgment. The court was also concerned with whether the estate would have the ability to go before the district court and ask for entry of the default to be withdrawn.

---

[4] Although entry of default may establish liability, contrary to the Tindalls' assertion, the entry of a default judgment by the court is not simply a ministerial act. Under Civil Rule 55(b), a federal court may enter a default judgment against a party who has failed to plead or otherwise defend. Under the rule, "[t]he court may conduct hearings or make referrals . . . when, to effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Civil Rule 55(b)(2). Thus, entry of a default judgment is discretionary, Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980), and "may be refused where the court determines no justifiable claim has been alleged or that a default judgment is inappropriate for other reasons." Doe v. Qi, 349 F.Supp.2d 1258, 1271 (N.D. Cal. 2004).

-12-

Accordingly, the bankruptcy court did not find retroactive annulment of the stay was appropriate in light of the fact that the Tindalls were not involved in the California Action and Rene, the violator of the stay, agreed that the default judgment was void through a stipulation signed three years prior to the Tindalls' Motion for Relief.

In sum, a bankruptcy court has "wide latitude" in granting or denying a request for retroactive annulment of the stay. In re Schwartz, 954 F.2d at 572; In re Fjeldsted, 293 B.R. at 21. The record shows that the bankruptcy court properly balanced the equities in refusing to annul the stay retroactively. Indeed, the court considered the Tindalls' delay in bringing their Motion for Relief to be an almost dispositive factor. In reality, a consequence of overturning the bankruptcy court's decision would only perpetuate the delay in resolving this proceeding.

## VI. CONCLUSION

Accordingly, we conclude that the bankruptcy court did not err in denying the Tindalls' Motion for Relief and AFFIRM.