FILED

FEB 26 2015

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | ) BAP No. NC-14-1070-JuTaPa |
| ANITA G. CHESLEY, | ) Bk. No. 13-46238 |
| Debtor. | ) |
| _____ | ) |
| ANITA G. CHESLEY, | ) |
| Appellant, | ) |
| v. | ) M E M O R A N D U M* |
| RWW PROPERTIES, LLC, | ) |
| Appellee. | ) |
| _____ | ) |

Argued and Submitted on February 19, 2015
at San Francisco, California

Filed - February 26, 2015

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Roger L. Efremsky, Chief Bankruptcy Judge, Presiding

_____

Appearances: Julie Bettencourt Cliff of Yesk Law argued for appellant Anita G. Chesley; Michael St. James of St. James Law, P.C. argued for appellee RWW Properties, LLC.

_____

Before: JURY, TAYLOR, and PAPPAS, Bankruptcy Judges.

---

* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

-1-

Chapter 13[1] debtor Anita G. Chesley (debtor) appeals from the bankruptcy court's order denying her motion for reconsideration of an order annulling the automatic stay in favor of RWW Properties, LLC (RWW). We AFFIRM.

## I. FACTS

Debtor, who is 95, owned property located at 412-418 48th Street in Oakland, California. Debtor resided in 412 and relied upon rental income from the other units for support. Her daughter, Catalina Chesley, assists her with her business affairs.

Wells Fargo Bank, N.A. (Wells Fargo) held a first and second deed of trust against debtor's property. Regional Trustee Services Corporation (RTSC) was the trustee under the deeds of trust. Debtor was in arrears on the obligations secured by first and second deed of trusts in the amounts of $182,166 and $5,331, respectively.

## A. Debtor's Prior Chapter 13 Petitions Are Dismissed

On November 23, 2011, debtor filed pro se a skeletal chapter 13 petition (Bankr. Case No. 11-72386), which was later dismissed based on her failure to file documents. On April 4, 2013, debtor filed pro se a second skeletal chapter 13 petition (Bankr. Case No. 13-42087), which was also dismissed based on her failure to file documents. We have taken judicial notice of debtor's prior cases filed with the bankruptcy court through its

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure and "Civil Rule" references are to the Federal Rules of Civil Procedure.

-2-

electronic docketing system.  See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957–58 (9th Cir. 1989).

**B.    The Instant Case - Debtor's Third Bankruptcy Case**

Subsequently, Maria Boruta, a licensed real estate sales agent, attempted to renegotiate the loan with Wells Fargo on debtor's behalf.  On November 12, 2013, Wells Fargo notified Ms. Boruta that it had scheduled a foreclosure sale for November 18, 2013, at 1:00 p.m.  Although Ms. Boruta was working to postpone the sale due to a pending short sale, she was advised on the morning of November 18th that the foreclosure sale would not be postponed.  At 9:17 a.m. on November 18th, Ms. Boruta filed debtor's skeletal chapter 13 petition with the bankruptcy court.

The petition listed debtor's street address as 412 48th Street, Oakland, CA, and listed debtor's mailing address as 6 Perth Place, Berkeley, CA.  No Creditors Matrix was filed with the petition.  Debtor included a "List of 20 Largest Creditors" which contained as its sole entry "Wells Frago [sic] 877-859-1860" and which was signed by debtor on April 9, 2013.[2]

Later that same day, at approximately 12:00 p.m., debtor's property was sold at the foreclosure sale to RWW for $860,050. RWW is in the business of purchasing properties for investment purposes.

On November 25, 2013, RWW filed a motion to retroactively annul the automatic stay in order to obtain clear title to the

---

[2] This date would imply the debtor signed this document in conjunction with her second prior case.

-3-

property. RWW asserted that it was not aware of a bankruptcy case involving the property at the time of the foreclosure sale. Citing the twelve non-exclusive factors for evaluating the equities associated with a request to annul the stay under Fjeldsted v. Lien (In re Fjeldsted), 293 B.R. 12, 24 (BAP 9th Cir. 2003), RWW argued that eight of the twelve factors militated in favor of granting the relief. In support of the motion, RWW submitted the declaration of Wayne Lippman, one of RWW's managing members, who declared that neither he nor RWW had any notice of debtor's bankruptcy at the time of the foreclosure sale.

On December 10, 2013, debtor's petition was amended after she hired Matthew M. Spielberg as her attorney. In Schedule D, debtor valued the property at $550,000 and showed Wells Fargo was owed $997,350 under the first deed of trust and $72,000 under the second deed of trust.

On December 11, 2013, the day of the scheduled hearing for RWW's motion to annul the stay, a document was filed on debtor's behalf which sought a fourteen-day extension for filing opposition to RWW's motion. This pleading referred to debtor as "he" and alleged that debtor discovered that "he" was probably victimized by foreclosure fraud, with the collusion of RWW. The document was signed by debtor and dated the same day the document was filed. This document, referred to as Exhibit 13 in debtor's motion for reconsideration described below, would come under the bankruptcy court's scrutiny because it was unclear who had filed the document.

At the hearing on RWW's motion, the bankruptcy court

-4-

considered the Fjeldsted factors. The court noted that this was debtor's third bankruptcy filing and there was no credit counseling certificate filed postpetition or a declaration regarding exigent circumstances. The court also observed that the automatic stay was going to expire on December 18, 2013, and that there was no request to extend the stay beyond that date. According to the court, these facts weighed in favor of annulling the stay.

The bankruptcy court also questioned debtor's overall good faith when her prior two bankruptcies were dismissed for failure to file documents. The bankruptcy court had issued an order requiring debtor to comply with the filing requirements in the present case by December 3, 2013, which she did not do. Accordingly, the court noted that debtor had not complied with the Bankruptcy Code or Rules in any of her cases.

The bankruptcy court further observed that the declaration of Mr. Lippman showed that RWW had no knowledge of debtor's bankruptcy and automatic stay. The court noted that RWW moved for annulment of the stay within days of the foreclosure sale and took no other action in violation of the stay. The court further found RWW was a bona fide purchaser and that without retroactive annulment RWW would be harmed.

In considering the cost of annulment, the bankruptcy court found it would not cost debtor or creditors anything since RWW had already paid the money for the property. The bankruptcy court also found no irreparable harm to debtor when her case was going to be dismissed. Finally, the court considered whether the annulment would promote judicial economy when this was

-5-

debtor's third bankruptcy. In the end, the court concluded that the Fjeldsted factors weighed in favor of annulling the stay.

On the same day, the bankruptcy court dismissed debtor's bankruptcy case.

The bankruptcy court entered the order granting RWW's motion on December 13, 2013. The order provided that the bankruptcy court retained jurisdiction to resolve disputes respecting the effect of the order.

On December 27, 2013, debtor filed a motion for reconsideration pursuant to Civil Rule 60(b)(1), (2), (3), (4), and (6).[3] Debtor's primary challenge was to RWW's status as a bona fide purchaser. Debtor argued that RWW had notice through its agents that a bankruptcy petition was being filed on debtor's behalf. Incorporated into the motion was the joint declaration of Catalina Chesley and Xavier Webb Zapata, debtor's son-in-law.[4] Catalina and Xavier declared that agents of RWW came by debtor's residence at 10:00 a.m. on November 18, 2013, and were told that the bankruptcy was being filed. According to debtor, this information constituted "newly discovered evidence" warranting relief from the order.

In opposition, RWW argued that the declaration of Catalina and Xavier was not "newly discovered" as the evidence was always

---

[3] Civil Rule 60 is made applicable to bankruptcy proceedings under Rule 9024.

[4] Catalina and Xavier filed a chapter 13 bankruptcy petition on October 21, 2013 (Bankr. Case No. 13-45281). Their omissions and misrepresentations in their schedules would later come under scrutiny at the evidentiary hearing on debtor's motion for reconsideration.

-6-

known and could have been presented in response to the motion to annul. RWW further questioned the credibility of Catalina who testified in her deposition that she went to RWW's website and that "refreshed her recollection" about RWW's agents, Philip Fair and Donna Madden, who had conversations with her about debtor's bankruptcy filing on the morning of November 18th, and that Mr. Fair had given her a business card with RWW's logo on it. RWW asserted that if the court found RWW was not a bona fide purchaser, the Fjeldsted factors still supported annulling the stay in its favor.

In support of the opposition, RWW submitted the declarations of Mr. Fair, Sam Katzen, Lloyd Meltzer, and Ms. Madden. Mr. Fair declared that he visited the property on the morning of November 18th, but that he went alone and was certain that neither Catalina nor Xavier had told him that the property or the homeowner was in bankruptcy. He also declared that he was not employed by RWW and did not have a RWW business card.

Mr. Katzen declared that he was employed by RWW and went to debtor's property alone on the morning of November 18th to evaluate it for RWW. Mr. Katzen did not recall speaking with anyone from inside the property and was given no information about the rescheduling of the foreclosure sale or any bankruptcy filing.

Mr. Meltzer, also employed by RWW, declared that he went to the property on November 18th and asked a "man and a woman" if he could look inside. Mr. Meltzer declared that the "man and woman" (presumably Catalina and Xavier) were "hostile" and "did

-7-

not mention anything about bankruptcy." According to Mr. Meltzer, the man and woman asked for his business card, but he did not have one.

Ms. Madden declared that she was a licensed realtor, associated with the Danville/Blackhawk office of Alain Pinel Realtors. Ms. Madden stated that although she provides assistance to RWW from time to time, it has never been with respect to properties located in Oakland. Ms. Madden declared that on the morning of November 18th she was at her home in Diablo, California, and never went to debtor's property.

In reply, debtor's new attorney J. Harmond Hughey,[5] argued that Catalina's declaration directly contradicted RWW's position that it was unaware of debtor's bankruptcy filing. Hughey asserted that the information in the declaration was "newly discovered" due to the fact that debtor's prior attorney dealt strictly with debtor and her real estate agent, Ms. Boruta, and had no reasonable idea that debtor's daughter might hold evidence essential to opposing the motion to annul. Catalina submitted another declaration which questioned the credibility of Mr. Fair and the others.

On January 22, 2014, the bankruptcy court held an initial hearing on debtor's motion. During the course of the hearing, the bankruptcy court stated that it had serious concerns as to whether debtor had signed the petition that supposedly put the stay into effect. When debtor took the stand and was placed

---

[5] At the same time, attorney Hughey also represented Catalina and Xavier in their bankruptcy case.

under oath, she confirmed that it was her signature on the petition. However, the bankruptcy court was not convinced that it was debtor's signature and thought it was her daughter's. When the court questioned debtor about the mailing address in Berkeley which was on her petition, debtor could not remember whose address it was. Debtor also did not know whose phone number was reflected on the petition and thought maybe that it was her daughter's. After hearing debtor's testimony, the bankruptcy court decided that debtor's motion for reconsideration would come down to a credibility issue and therefore an evidentiary hearing would be appropriate. The bankruptcy court also stated: "I think there's some really serious issues that are going on here that I want to get to the bottom of and create a record."

At the January 24, 2014 evidentiary hearing, witnesses for debtor — debtor, Ms. Boruta, Catalina and Xavier — were cross examined by counsel and at times, by the bankruptcy court. Witnesses for RWW — Mr. Fair, Mr. Lippman, Mr. Katzen, Ms. Madden (via telephone) and Mr. Meltzer (via telephone) — were also cross examined.

After hearing closing arguments, the bankruptcy court placed its findings of fact and conclusions of law on the record. In the end, the bankruptcy court concluded that the Fjeldsted factors favored RWW and denied debtor's motion for reconsideration. The court entered the order denying the motion on January 27, 2014. Debtor filed a timely notice of appeal (NOA).

Although debtor's NOA only referenced the order denying the

-9-

reconsideration motion, we will treat her appeal as also requesting review of the underlying order annulling the automatic stay. During the motion for reconsideration, the bankruptcy court confirmed its earlier ruling, finding that the Fjeldsted factors still weighed in favor of RWW. Further, the parties have fully briefed the issues arising from the underlying annulment order. See Lolli v. Cnty. of Orange, 351 F.3d 410, 414-15 (9th Cir. 2003); Wash. State Health Facilities Ass'n v. Wash. Dep't of Soc. & Health Servs., 879 F.2d 677, 681 (9th Cir. 1989).

## II. JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(G). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

A. Did the bankruptcy court abuse its discretion by granting RWW's motion to annul the automatic stay?

B. Did the bankruptcy court abuse its discretion by denying debtor's motion for reconsideration?

## IV. STANDARDS OF REVIEW

A bankruptcy court's decision to grant retroactive relief from the automatic stay is reviewed for an abuse of discretion. Nat'l Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp.), 129 F.3d 1052, 1054 (9th Cir. 1997); Williams v. Levi (In re Williams), 323 B.R. 691, 696 (9th Cir. BAP 2005).

We also review the bankruptcy court's denial of a motion for reconsideration for an abuse of discretion. Tracht Gut, LLC

-10-

v. Cnty. of L.A. Treasurer & Tax Collector (In re Tracht Gut, LLC), 503 B.R. 804, 810 (9th Cir. BAP 2014).

In applying an abuse of discretion test, we first "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." United States v. Hinkson, 585 F.3d, 1247, 1262 (9th Cir. 2009) (en banc). If the bankruptcy court identified the correct legal rule, we then determine whether its "application of the correct legal standard [to the facts] was (1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'" Id. (quoting Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 577 (1985)). If the bankruptcy court did not identify the correct legal rule, or its application of the correct legal standard to the facts was illogical, implausible, or without support in inferences that may be drawn from the facts in the record, then the bankruptcy court has abused its discretion. Id.

Under the abuse of discretion standard, we cannot reverse unless we have a definite and firm conviction that the bankruptcy court committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors for annulment of the automatic stay. See Smith v. Jackson, 84 F.3d 1213, 1221 (9th Cir. 1996).

## V.  DISCUSSION

**A.   The bankruptcy court did not err in annulling the stay.**

Actions taken in violation of the automatic stay are void. However, an action taken in violation of the automatic stay that would otherwise be void may be declared valid if cause exists

-11-

for retroactive annulment of the stay. Schwartz v. United States (In re Schwartz), 954 F.2d 569, 573 (9th Cir. 1992).

Section 362(d) expressly authorizes a bankruptcy court to terminate, annul, modify, or condition the automatic stay in a bankruptcy case for "cause." In deciding whether "cause" exists to annul the stay, a bankruptcy court should examine the circumstances of the specific case and balance the equities of the parties' respective positions. Gasprom, Inc. v. Fateh (In re Gasprom, Inc.), 500 B.R. 598, 607 (9th Cir. BAP 2013) (citing In re Nat'l Envtl. Waste Corp., 129 F.3d at 1055); In re Fjeldsted, 293 B.R. at 24. Under this approach, the bankruptcy court considers (1) whether the creditor was aware of the bankruptcy petition and automatic stay and (2) whether the debtor engaged in unreasonable or inequitable conduct. In re Nat'l Envtl. Waste Corp., 129 F.3d at 1055.

In Fjeldsted, we approved additional factors for consideration in assessing the equities. The twelve non-exclusive factors are: (1) number of filings; (2) whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors; (3) a weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser; (4) the debtor's overall good faith (totality of circumstances test); (5) whether creditors knew of stay but nonetheless took action, thus compounding the problem; (6) whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules; (7) the relative ease of restoring parties to the status quo ante; (8) the costs of

-12-

annulment to debtors and creditors; (9) how quickly creditors moved for annulment, or how quickly debtor moved to set aside the sale or violative conduct; (10) whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief; (11) whether annulment of the stay will cause irreparable injury to the debtor; and (12) whether stay relief will promote judicial economy or other efficiencies. 293 B.R. at 24. The Panel noted that these factors merely present a framework for analysis and "[i]n any given case, one factor may so outweigh the others as to be dispositive." Id. at 25.

In a separate discussion, the Panel held that bona fide purchaser status, standing alone, cannot constitute "cause" for stay relief under § 362(d)(1). Id.

On appeal, debtor argues that a fair balance of the equities would necessitate a finding that the automatic stay in this case should not have been annulled. Debtor complains that the bankruptcy court did not balance the equities, but focused exclusively on whether RWW was a bona fide purchaser. Debtor also contends that Ms. Boruta's declaration shows that she faxed the bankruptcy documents to several different departments at Wells Fargo and confirmed that each department had received the documentation. Relying on Ms. Boruta's declaration, debtor concludes that Wells Fargo knew of the bankruptcy filing, but proceeded with the foreclosure sale anyway through its agent RTSC, and thus the foreclosure sale was void. Finally, debtor maintains that annulment of the stay will cause, and has caused, debtor irreparable injury because she is 95 years old, in frail

-13-

health and having to vacate her home has been very stressful for her physically and emotionally.

Debtor's arguments mischaracterize the bankruptcy court's analysis under Fjeldsted. When reviewing for abuse of discretion, as here, we will reverse only if we hold a "definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." Smith v. Jackson, 84 F.3d at 1221. We have no such conviction here.

The record shows that the bankruptcy court considered all the Fjeldsted factors and did not rely on RWW's bona fide purchaser status alone for its decision. The bankruptcy court considered that debtor filed three skeletal bankruptcy cases, all of which were dismissed based on her failure to file documents and which were filed to prevent a foreclosure sale of the property. These facts implicate Fjeldsted factors one, two, and six. The bankruptcy court questioned debtor's overall good faith when the property was purchased for $360,000 over what debtor estimated the value of the property to be and noted that she had not complied with the Bankruptcy Code or Rules in any of her cases. These findings implicate factor four.

In addition, the record supports the bankruptcy court's finding that RWW was unaware of the stay at the time of the sale, which satisfies factor five. While debtor disputes this finding on appeal, the bankruptcy court did not find debtor's witnesses credible. Moreover, although debtor complains that Wells Fargo knew about the bankruptcy filing, there is nothing in the record that supports this contention other than

Ms. Buruta's declaration which the bankruptcy court did not find credible. Credibility determinations "demand[] even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." Anderson, 470 U.S. at 575; see also Civil Rule 52(a) (made applicable to bankruptcy proceedings by Rule 7052 and requiring the reviewing court to give due regard "to the trial court's opportunity to judge the witnesses' credibility."); Rule 8013 (same).

The court also noted that once RWW learned of the bankruptcy it promptly moved to annul the stay and did not take any further steps in violation of the stay, which satisfies Fjeldsted's factors nine and ten. Although the bankruptcy court was sympathetic to debtor's age and the impact of losing her home, the bankruptcy court found no irreparable injury to debtor in light of the fact that she acknowledged in her schedules there was no equity in the property.

In connection with debtor's motion for reconsideration, the bankruptcy court found RWW was a bona fide purchaser of the subject property because it had no knowledge of the bankruptcy filing. In applying factor three, the bankruptcy court weighed the extent of prejudice to RWW if the stay relief was not made retroactive. The bankruptcy court noted that RWW had to incur significant attorney's fees in obtaining annulment of the stay and then to combat the motion for reconsideration.

Finally, the court considered whether stay relief would promote judicial economy or other efficiencies under factor

-15-

twelve. The court found that in light of the fact that this was debtor's third bankruptcy filing, "stay relief will promote judicial economy and other efficiencies." For all these reasons, the bankruptcy court concluded that the Fjeldsted factors fell in favor of RWW.

In sum, the record shows that the bankruptcy court correctly applied the balancing of equities test under In re Fjeldsted, without affording undue weight, let alone exclusive weight to any one factor. Therefore, we conclude the bankruptcy court did not abuse its discretion in finding that cause existed for retroactive annulment of the stay to validate the foreclosure sale.

**B. The bankruptcy court did not abuse its discretion in denying debtor's motion for reconsideration.**

On appeal, debtor argues that the bankruptcy court did not consider the evidence presented in support of her motion for reconsideration under Civil Rule 60(b). According to debtor, there were newly discovered evidence, fraud or misconduct and other factors that "weighed" in favor of granting the motion.

The record does not support these contentions. The sole issue raised in debtor's motion for reconsideration was a question of fact concerning RWW's knowledge of debtor's bankruptcy filing prior to the foreclosure sale. According to debtor's daughter, Catalina, she told agents of RWW who visited the property on the morning of the foreclosure about the bankruptcy filing. RWW's witnesses Mr. Fair, Mr. Katzen, Mr. Meltzer, Ms. Madden, and Mr. Lippman all refuted such knowledge.

The bankruptcy court held a six-hour evidentiary hearing on January 24, 2014, at which witnesses for debtor and RWW were cross examined. After hearing testimony, the bankruptcy court found debtor to be forthright and honest, but noted that given her age she was dependent upon her daughter, Catalina. The court found the testimony of Mr. Fair, Mr. Katzen, Ms. Madden, Mr. Meltzer and Mr. Lippman credible and believed that none of them was ever told by anybody that a bankruptcy case had been filed on November 18th on behalf of debtor. The court did not find Ms. Boruta's testimony credible. She initially testified that she had written her office address on debtor's bankruptcy petition and when pressed by the court admitted that she may have made numerous changes and actually filled in most of the document. Moreover, she actually filed the document with the bankruptcy court. The bankruptcy court believed that Ms. Boruta actually did prepare the petition and that under the law she would be deemed a petition preparer and did not disclose that fact.

The bankruptcy court was also concerned with Exhibit 13 which was the motion for an extension of time to file opposition to RWW's motion to annul the stay. There was no conclusive evidence as to who prepared the document. However, the bankruptcy court noted that clearly debtor did not prepare the document and that it seriously doubted that Catalina or Xavier prepared it since it referred to debtor as being a male and it appeared that the person who wrote it did not speak English as her first language.

In sum, the court believed the testimony of the RWW

-17-

witnesses and did not put weight on the testimony of the witnesses in support of reconsideration. Based upon these credibility determinations, the bankruptcy court found that RWW was a bona fide purchaser of the property at the foreclosure sale that occurred on November 18, 2013, because it did not know about debtor's bankruptcy. Even if we assume that the joint declaration of Catalina and Xavier constituted newly discovered evidence under Civil Rule 60(b)(2), which we do not, the bankruptcy court's findings based on the credibility of witnesses "demand[] even greater deference to the trial court's findings[.]" Anderson, 470 U.S. at 575. Therefore, we cannot say the trial court's interpretation of the facts is implausible on its face. Accordingly, the bankruptcy court did not abuse its discretion in denying debtor's motion for reconsideration.

## VI. CONCLUSION

For the reasons stated, we AFFIRM.