NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP Nos. HI-18-1045-TaBKu |
| | HI-18-1046-TaBKu |
| RONALD BRUCE STATON, | (consolidated) |
| Debtor. | Bk. No. 1:17-bk-1316-RF |
| RONALD BRUCE STATON, | |
| Appellant, | |
| v. | MEMORANDUM* |
| UNITED STATES OF AMERICA/INTERNAL REVENUE SERVICE; HOWARD M.S. HU, TRUSTEE, | |
| Appellees. | |

Submitted Without Oral Argument on February 21, 2019

Filed – February 27, 2019

Appeal from the United States Bankruptcy Court
for the District of Hawaii

---

* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Honorable Robert J. Faris, Chief Bankruptcy Judge, Presiding

Appearances: Appellant Ronald B. Staton pro se on brief; Charles M. Duffy on brief for Appellee the United States of America/Internal Revenue Service.

Before: TAYLOR, BRAND, and KURTZ, Bankruptcy Judges.

**INTRODUCTION**

Chapter 13[1] debtor Ronald Staton and his wife owned residential real property in Honolulu, Hawaii (the "Property"). The United States, through the Internal Revenue Service, obtained judgments against Debtor for unpaid taxes and, through district court judgment enforcement proceedings, obtained an order allowing foreclosure on the Property.

Debtor and his wife responded with serial bankruptcy petitions filed at significant points in the foreclosure process. Consistent with this pattern, Debtor initiated the present bankruptcy case minutes before a scheduled foreclosure auction. Notwithstanding the bankruptcy filing, the foreclosure sale took place. The United States then sought and obtained retroactive stay relief to validate the sale.

On appeal, Debtor states correctly that the auction was void *ab initio* and argues that retroactive stay relief was not warranted because the

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

United States allegedly knew about the bankruptcy petition before the auction commenced. The record does not cleanly evidence that the United Sates had this knowledge, but even if it did, this fact is not dispositive. The bankruptcy court, obliged to evaluate the equities of the particular case, considered and found more relevant other factors, including judicial economy concerns and the multiple bankruptcy filings. Debtor does not show that this was an abuse of discretion.

Debtor also argues that the bankruptcy court erred when it denied his motion to continue the automatic stay. But his bankruptcy case has been dismissed, and he did not appeal from that dismissal. This moots any appeal as to that order.

Accordingly, we AFFIRM the order granting retroactive stay relief and DISMISS any appeal of the order denying the stay continuance motion for lack of jurisdiction.

## FACTS

Debtor failed to appropriately pay federal taxes. As a consequence, in an August 31, 2015 order, the United States District Court for the District of Hawaii (the "District Court") determined that Debtor owed the United States $370,437.03 (with interest calculated to September 1, 2015). It also entered an order allowing the United States to foreclose on the Property, which Debtor and his wife had owned since the late 1980s.

The foreclosure did not proceed undeterred. As the bankruptcy court

3

later found, Debtor and his wife filed three chapter 13 petitions; each appeared calculated to derail the foreclosure process. They filed a case the day after the district court entered a foreclosure order, and then filed two others the day of or the day before a scheduled foreclosure sale.

Most relevant here, on December 20, 2017, the District Court denied Debtor's request to stay the foreclosure sale and stated that foreclosure would proceed at noon that same day. The parties do not dispute that the foreclosure sale then commenced and concluded; nor do they dispute that Debtor filed a chapter 13 petition minutes before the foreclosure sale began.

Two days later, the United States sought retroactive relief from the automatic stay. It asserted that the District Court's appointed commissioner (who conducted the foreclosure sale) learned of the 11:54 a.m. bankruptcy filing only after the auction was completed. It supported this assertion with a declaration from the commissioner stating, among other things that: because she needed to register the significant number of interested bidders before the noon auction, she left her office at 11:30 a.m.; she arrived at the district court about 11:40 a.m.; the auction began promptly at noon and finished before 12:10 p.m.; only when she returned to her office at 12:20 p.m. did her staff inform her that Debtor called the office at 12:11 p.m. and 12:16 p.m. to tell her he had filed bankruptcy.

In his opposition papers, Debtor conceded that he and his wife "filed all of the [bankruptcy] Petitions to prevent foreclosure on [the Property]."

4

January 16, 2018, Objections to United States' Motion for Relief from Automatic Stay at 3. But, as justification, he argued that the United States had aggressively sought to thwart their efforts to pay the debt through a loan secured by the Property. He also argued, without offering evidentiary support, that the United States knew about the bankruptcy filing before the auction.

The bankruptcy judge granted the motion. In his oral ruling, he explained: first, this was the fourth bankruptcy case filed by Debtor or Debtor's spouse and despite the earlier cases they had not worked out a solution; and second, the District Court judges handling the foreclosure were available to preside over the two-party dispute, and he did not see a good reason to have a third judge get involved. The next day, the bankruptcy court entered an order granting relief from the automatic stay, retroactively effective to December 20, 2017.

Debtor then filed a motion to vacate the retroactive stay relief order. But the bankruptcy court denied that motion three days later for several reasons: Debtor and his wife, having collectively filed four chapter 13 petitions, were serial bankruptcy filers; they filed the petitions to thwart the District Court foreclosure proceedings; and, although the District Court and bankruptcy court had, previously, given Debtor ample time to pay off the debt, Debtor was unsuccessful in doing so and there was no reason to believe the result would be any different in the instant case.

Meanwhile, Debtor filed a motion to continue the automatic stay, which drew opposition from both the United States and the United States Trustee. The bankruptcy court denied the stay continuance motion.

Debtor filed a notice of appeal on February 15, 2018 that identified the order granting the stay annulment motion and the order denying the motion to vacate, alter, or amend that order as the relevant documents.

On July 31, 2018, the bankruptcy court dismissed Debtor's bankruptcy case; it later denied Debtor's reconsideration motion. Debtor did not appeal those decisions.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(G). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Do we have jurisdiction over the order denying the motion to continue the stay?

Did the bankruptcy court abuse its discretion when it granted retroactive stay relief?

## STANDARD OF REVIEW

We review our own jurisdiction de novo. *Ellis v. Yu (In re Ellis)*, 523 B.R. 673, 677 (9th Cir. BAP 2014).

We review for an abuse of discretion a bankruptcy court's decision to retroactively annul the automatic stay. *Nat'l Envtl. Waste Corp. v. City of*

6

*Riverside (In re Nat'l Envtl. Waste Corp.)*, 129 F.3d 1052, 1054 (9th Cir. 1997). A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or makes factual findings that are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *See TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011) (*citing United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

## DISCUSSION

Because he is pro se, we liberally construe Debtor's appellate brief. *See Cruz v. Stein Strauss Trust # 1361 (In re Cruz)*, 516 B.R. 594, 604 (9th Cir. BAP 2014).

### A.    Any appeal from the denial of Debtor's motion to continue the stay is moot.

In his opening brief, Debtor argues that the bankruptcy court erred when it denied his motion to continue the automatic stay beyond 30 days postpetition. *See* 11 U.S.C. § 362(c)(3). But Constitutional mootness bars our consideration of the issues related to denial of the stay continuance motion.

Constitutional mootness derives from the case-or-controversy requirement of Article III. *Castaic Partners II, LLC v. DACA-Castaic, LLC (In re Castaic Partners II, LLC)*, 823 F.3d 966, 968 (9th Cir. 2016) (citing *Clear Channel Outdoor Inc. v. Knupfer (In re PW, LLC )*, 391 B.R. 25, 33 (9th Cir. BAP 2008)). If an appeal is moot, there is no remaining case or controversy,

7

and we lack jurisdiction. *In re Ellis*, 523 B.R. at 677. Here dismissal of the underlying bankruptcy case coupled with the failure to appeal from the dismissal order necessarily mooted any appeal from the order denying the motion to continue the stay; we cannot fashion effective relief on appeal. *See Castaic Partners,* 823 F. 3d at 969.[2]

That said, we have jurisdiction over the order annulling the automatic stay. Although both orders concern the automatic stay, they do so in different ways. As noted, both parties agree that when Debtor filed his bankruptcy petition, the automatic stay was imposed; they also agree that, when the foreclosure occurred minutes later (and well before the stay expired 30 days later), the automatic stay was in place. As a result, absent stay annulment, the foreclosure sale is void and we can provide Debtor relief.

**B.     The bankruptcy court did not abuse its discretion when it retroactively annulled the automatic stay.**

Generally, actions that violate the automatic stay are void *ab initio*. *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 571 (9th Cir. 1992). The Code, however, gives bankruptcy courts wide latitude in crafting relief

---

[2] This is because, once the bankruptcy is dismissed, "neither the goal of a successful reorganization nor the debtor's right to the automatic stay continues to exist." *Id.* (quoting *Olive St. Inv., Inc. v. Howard Sav. Bank*, 972 F.2d 214, 216 (8th Cir. 1992)). And "[a]bsent an appeal from the dismissal orders, we have no power to restore the bankruptcy proceeding." *Id.* As a result, "it no longer serves any purpose to determine whether the bankruptcy court properly lifted the automatic stay; the appeal has become moot." *Id.* (quoting *Olive St.*, 972 F.2d at 216).

from the automatic stay, including the power to grant retroactive relief. *In re Nat'l Envtl. Waste Corp.*, 129 F.3d at 1054; 11 U.S.C. § 362(d). Retroactive relief validates acts that otherwise violate the automatic stay. *Mataya v. Kissinger (In re Kissinger)*, 72 F.3d 107, 108–09 (9th Cir. 1995).

To determine whether cause exists to grant retroactive stay relief, bankruptcy courts should balance the equities on a case by case basis. *In re Nat'l Envtl. Waste Corp.*, 129 F.3d at 1054–55. Two primary factors are: "(1) whether the creditor was aware of the bankruptcy petition; and (2) whether the debtor engaged in unreasonable or inequitable conduct, or prejudice would result to the creditor." *Id.* at 1055. We also have identified a twelve factor analysis but have cautioned that "[i]n any given case, one factor may so outweigh the others as to be dispositive." *Fjeldsted v. Lien (In re Fjeldsted)*, 293 B.R. 12, 24–25 (9th Cir. BAP 2003). The *Fjeldsted* factors include those identified by the Ninth Circuit in *National Environmental Waste* and, among others: the number of filings; whether, in a repeat filing case, the circumstances indicate an intent to delay and hinder creditors; and whether stay relief will promote judicial economy or other efficiencies. *Id.* at 25.

The bankruptcy court considered these factors. It noted that: this was Debtor and his wife's fourth combined bankruptcy filing; each bankruptcy filing was designed to thwart the United States' foreclosure efforts; and, alluding to judicial economy, there was no need for a third federal judge to

get involved in the dispute.

On appeal, Debtor asserts that the United States had knowledge of the bankruptcy filing before the auction and yet still proceeded with it; thus, he contends, the bankruptcy court did not have sufficient grounds to retroactively lift the stay "and actually rewarded the United States' bad faith actions when it knowingly sold the property while the bankruptcy petition was pending." Opening Br. at 4.

We disagree. To start, although Debtor correctly identifies one of the factors relevant to retroactive stay relief, he fails to address the bankruptcy court's analysis of the other factors. As a result, we confine our analysis to the four identified factors; we treat any argument that any other factor should be relevant as waived. *Orr v. Plumb*, 884 F.3d 923, 932 (9th Cir. 2018) ("The usual rule is that arguments raised for the first time on appeal or omitted from the opening brief are deemed forfeited."); *McKay v. Ingleson*, 558 F.3d 888, 891 n.5 (9th Cir. 2009) ("Because this argument was not raised clearly and distinctly in the opening brief, it has been waived.").

Even assuming Debtor's unproven factual assertion (that the United States had notice of the filing before the auction) is correct, he does not argue why that particular factor should outweigh the other factors and be dispositive. Put differently, the bankruptcy court correctly considered the equities of the particular case before it, weighed the various factors, and concluded that retroactive stay relief was warranted. Debtor does not

10

discuss this analysis.

Debtor also did not submit evidence establishing that he contacted the United States before the foreclosure occurred. For example, he did not say that he contacted the District Court (where the foreclosure happened), that he went to the auction and notified those present, or that he sent a representative to the auction. To the contrary, the United States presented declaratory evidence that Debtor provided notice *after* the foreclosure was completed. Debtor's notice was less than pristine. In light of this, the bankruptcy court's conclusion that the other factors were more relevant was not an abuse of discretion.

Debtor's remaining arguments are unavailing. First, he says the only proper procedure was to void the foreclosure sale because it violated the automatic stay. But the bankruptcy court had considerable discretion to fashion relief, including making relief retroactive. 11 U.S.C. § 362(d).

Second, he argues that the United States did not show that he filed only to invoke the automatic stay and never intended to restructure his financial affairs; he asserts that he always intended to propose and perform on a plan; and he "contends that the mere filing of more than one bankruptcy Petition **does not** support a showing of bad faith." Opening Br. at 5. Putting aside that the bankruptcy court did not affirmatively find bad faith, Debtor is in theory correct: multiple filings do not always indicate bad faith. But in this case, the bankruptcy court noted that there were

11

multiple filings that detrimentally impacted the foreclosure process. As a result, the bankruptcy court's finding that retroactive stay relief was warranted is not clearly erroneous.[3]

## CONCLUSION

Based on the foregoing, we DISMISS any appeal of the order denying the stay relief continuance motion for lack of jurisdiction and AFFIRM the order granting retroactive stay relief.

---

[3] In his notice of appeal, Debtor stated that he was appealing the February 15, 2018 order denying his motion to vacate, alter, or amend the stay annulment order. But he does not discuss that order in his opening appellate brief. He thus does not show that the bankruptcy court abused its discretion in denying that motion. We deem any argument to the contrary as waived. *Orr*, 884 F.3d at 932; *McKay*, 558 F.3d at 891 n.5.